United States Court of Appeals, Eleventh Circuit.

No. 95-8347.

In re Virginia Ann MEEHAN, Debtor.

Virginia Ann MEEHAN, Plaintiff-Appellant,

v.

A. Stephenson WALLACE, Chapter 7 Trustee, Defendant-Appellee.

Jan. 8, 1997.

Appeal from the United States District Court for the Southern District of Georgia. (No. 93-10463), John S. Dalis, Judge; (No. CV194-027), Dudley H. Bowen, Jr., Judge..

Before TJOFLAT and ANDERSON, Circuit Judges, and NANGLE[*], Senior District Judge.

ANDERSON, Circuit Judge:

Appellant Virginia Ann Meehan is a Chapter 7 debtor. The contested property is debtor's individual retirement account (IRA), which debtor claims is excluded from property of the estate under 11 U.S.C.A. § 541(c)(2). Both the bankruptcy court and the district court rejected debtor's argument and held that the IRA was included in her bankruptcy estate. We hold that debtor's IRA is excluded from the estate under 11 U.S.C.A. § 541(c)(2) because of the restriction on its transferability. Accordingly, we reverse.

I. FACTS

The facts are not in dispute. Debtor Virginia Ann Meehan filed for relief under Chapter 7 of the Bankruptcy Code on March 25, 1993, as a result of $125,000 of unsecured debt incurred from her ownership and operation of a children's store. Included in debtor's schedules was an IRA, which was opened in 1983 and valued

[*]Honorable John F. Nangle, Senior U.S. District Judge for the Eastern District of Missouri, sitting by designation.

at $20,954.47. The parties stipulated that debtor's IRA was one defined by § 408 of the Internal Revenue Code [Title 26 of the United States Code].[1]

## II. DISCUSSION

### A. *Standard of Review*

The sole question at issue in this case is whether 11 U.S.C.A. § 541(c)(2) excludes from the property of a bankruptcy estate an IRA which is subject to a restriction on transfer by a state statute. The proper construction of the Bankruptcy Code, whether by the bankruptcy court or by the district court, is a matter of law. Accordingly, we subject such interpretations to de novo review. *In re Haas,* 48 F.3d 1153, 1155 (11th Cir.1995).

### B. *Analysis*

Property of a bankruptcy estate includes "all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C.A. § 541(a)(1). The scope of § 541(a)(1) is broad, and includes property of all types, tangible and intangible, as well as causes of actions. *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 205 & n. 9, 103 S.Ct. 2309, 2313 & n. 9, 76 L.Ed.2d 515 (1983).

Debtor argues that her IRA is excluded from the bankruptcy estate pursuant to 11 U.S.C.A. § 541(c)(2), which provides:

---

[1]"An IRA ... is defined as a personal tax deferred, retirement account which an employed person can establish under specified deposit limits for individuals and married couples. Withdrawals may be made from an IRA prior to age 591/2 but such withdrawals are subject to a ten percent penalty tax. An IRA is neither established nor maintained by an employer or employee organization. Instead, an IRA is maintained by an individual pursuant to the restrictions contained in 26 U.S.C. § 408." *In re Herbert,* 140 B.R. 174, 176 (Bankr.N.D.Ohio 1992).

A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.[2]

Debtor argues that her IRA should be excluded from the estate under § 541(c)(2) because O.C.G.A. § 18-4-22(a) imposes a restriction on transfer by garnishment. Section 18-4-22(a) provides in relevant part:

> Funds or benefits from an individual retirement account as defined in Section 408 of the United States Internal Revenue Code of 1983, as amended, [are] exempt from the process of garnishment until paid or otherwise transferred to a member of such program or beneficiary thereof.

Appellee, the bankruptcy trustee, sets forth two reasons why debtor's IRA should not qualify for the § 541(c)(2) exclusion: first, because the transfer restriction is contained only in the Georgia statute and is not contained within the IRA document itself; and second, because debtor Meehan had access to the IRA funds for personal use and the restriction was applicable only to creditors.[3]

---

[2]Other restrictions or conditions on transfer do not result in exclusion from the bankruptcy estate. 11 U.S.C.A. § 541(c)(1).

[3]Appellee also argues that the IRA should be included in the estate because the nonbankruptcy law restricting its transfer, O.C.G.A. § 18-4-22(a), is invalidated by 11 U.S.C.A. § 541(c)(1)(A). Section 541(c)(1)(A), in pertinent part, states the following:

> Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate ... notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law— ... that restricts or conditions transfer of such interest by the debtor.

We disagree with appellee's interpretation of § 541(c)(1)(A). Section 541(c)(1)(A) says expressly, "[e]xcept as provided in (c)(2)," and (c)(2) excludes a beneficial interest in a trust if the trust is subject to a

In rejecting Meehan's claim for exclusion of the property, both the bankruptcy court and the district court relied in part on the fact that the restriction on transfer was contained only within the Georgia statute; the courts below found it significant that the IRA document itself contained no restriction on transfer. Both the district court and the bankruptcy court relied on dicta in *Patterson v. Shumate,* 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), which suggests that IRAs ordinarily will not qualify for exclusion under § 541(c)(2) because such plans usually lack transfer restrictions enforceable under applicable nonbankruptcy law. Read by itself, the dicta would provide some support for the interpretation of the courts below. However, read within its context, it is clear that the Court was commenting upon the fact that IRAs are not subject to the ERISA-mandated anti-alienation provision, (i.e. federal law does not mandate that IRAs contain such clauses). Thus, the Court was commenting on the fact that IRA documents typically would not contain transfer restrictions. It is clear from the context of the *Shumate* dicta that the Court was not addressing the very different factual situation of this case—i.e., where state law provides a restriction on the transferability of the IRA.

We conclude that § 541(c)(2) exclusion is not lost merely because the IRA document itself does not contain the restriction, it being contained instead in the Georgia statute. Our conclusion is supported by the plain meaning of the language of § 541(c)(2),

restriction on transfer (such as O.C.G.A. § 18-4-22(a)) enforceable under nonbankruptcy law.

which requires only that the restriction be "enforceable under applicable nonbankruptcy law."[4] Nothing in the language of the statute suggests that the restriction must be contained both within a relevant nonbankruptcy statute and also within the trust instrument itself.[5] Section 18-4-22(a) of the Official Code of Georgia Annotated clearly constitutes "applicable nonbankruptcy

---

[4]Apparently only beneficial interests in trusts qualify for the § 541(c)(2) exclusion. 11 U.S.C.A. § 541(c)(2) (referring to "[a] restriction on the transfer of a beneficial interest of the debtor in a trust"). No argument is made that Meehan's IRA is not a trust. Moreover, by definition, an IRA is a trust. 26 U.S.C.A. § 408(a) ("the term "individual retirement account' means a trust ...").

[5]The district court thought that the language of § 541(c)(2) suggested that the restriction must be found in the trust document itself in order to avoid an "implausible ... empty duplication." *In re Meehan,* 173 B.R. 818, 821 (S.D.Ga.1994). Explaining, the district court said:

> Filling in the blanks as required by Meehan's proposed application of § 541(c)(2) to her IRA yields a meaningless tautology: "[a] restriction [in O.C.G.A. § 18-4-22(a) ] ... that is enforceable under [O.C.G.A. § 18-4-22(a) ] ... is enforceable in a case under this title."

In other words, the district court substituted the reference to the Georgia statute in lieu of the shaded portion of § 541(c)(2) as follows:

> A restriction ~~on the transfer of beneficial interest of the debtor in a trust~~ that is enforceable under ~~applicable nonbankruptcy law~~ is enforceable in a case under this title.

The problem with the district court's construction is that it assumes that the phrase "in a trust" modifies the word "restriction." Rather, we believe that the phrase "in a trust" modifies the immediately preceding phrase "beneficial interest of the debtor." With this more natural reading of the language of the statute, so that the phrase "in a trust" means only that the statute is talking about a beneficial interest in a trust, the district court's implausible duplication disappears. *Accord In re Yuhas,* 186 B.R. 381, 385 (Bankr.D.N.J.1995).

law."  In order for the restriction in § 18-4-22(a) to be enforceable, nothing in Georgia law requires that the restriction be repeated in any IRA document.  Common sense also supports our interpretation; a restriction is no less enforceable because it is located in the statute rather than in the document.

In addition to the plain meaning of § 541(c)(2) and common sense, we believe our conclusion is supported by the case law.  In *Whetzal v. Alderson,* 32 F.3d 1302 (8th Cir.1994), the Eighth Circuit held that a debtor's interest in his civil service retirement benefits was excluded from his bankruptcy estate under § 541(c)(2) because of the statutory restriction on alienation contained in 5 U.S.C. § 8346(a).  As in this case, the restriction on transfer was contained in the statute, as neither the *Whetzal* opinion nor the statute indicate that there would be a plan document.[6]  *See also In re Yuhas,* 186 B.R. 381 (Bankr.D.N.J.1995) (where an IRA which did not contain a provision restricting creditor access to funds was nevertheless excluded from the bankruptcy estate under § 541(c)(2) because a state statute restricting access constituted "applicable non-bankruptcy law").

The appellee-trustee also argues that debtor Meehan's IRA cannot be excluded from her bankruptcy estate because she could withdraw the corpus of the trust and incur only a 10% penalty tax. The district court perceived an inequity in allowing debtors to shield IRA funds from creditors notwithstanding the debtors'

---

[6]*In re Solomon,* 67 F.3d 1128 (4th Cir.1995), is not to the contrary.  Although in the Chapter 13 context *Solomon* did say that an IRA would be part of the bankruptcy estate, the Fourth Circuit did not address the possible applicability of § 541(c)(2) to exclude the IRA.

ability to withdraw the corpus for personal use. In addition to the district court, bankruptcy courts have relied on this factor. *See In re Van Nostrand,* 183 B.R. 82, 85 (Bankr.D.N.J.1995); *In re Harless,* 187 B.R. 719, 726 (Bankr.N.D.Ala.1995). Although we recognize the force of the trustee's argument, we conclude that the case law indicates otherwise.

The Supreme Court in *Patterson v. Shumate,* 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), resolved a split among the circuits regarding whether the phrase "applicable nonbankruptcy law" referred to in § 541(c)(2) was limited only to state spendthrift trust law or instead encompassed federal law as well.[7] The Court rejected those pre-*Shumate* cases which had limited the § 541(c)(2) exclusion to state spendthrift trust law. *Shumate,* 504 U.S. at 761 & n. 4, 112 S.Ct. at 2248 & n. 4. The pre-*Shumate* cases had declined to apply the § 541(c)(2) exclusion to ERISA plans because plan beneficiaries have a greater ability to access plan funds than beneficiaries of spendthrift trusts. *See e.g., In re Goff,* 706 F.2d at 587; *In re Lichstrahl,* 750 F.2d at 1490.

---

[7]Before *Shumate,* the Ninth, Eleventh, Eighth and Fifth Circuits interpreted "applicable nonbankruptcy law" to include only state spendthrift trust law. *Daniel v. Security Pacific Nat'l Bank (In re Daniel),* 771 F.2d 1352 (9th Cir.1985), *cert. denied,* 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986); *Lichstrahl v. Bankers Trust (In re Lichstrahl),* 750 F.2d 1488 (11th Cir.1985); *Samore v. Graham (In re Graham),* 726 F.2d 1268 (8th Cir.1984); *Goff v. Taylor (In re Goff),* 706 F.2d 574 (5th Cir.1983). In contrast, the Tenth, Third, Sixth and Fourth circuits did not limit § 541(c)(2) to state spendthrift trust law. *Gladwell v. Harline (In re Harline),* 950 F.2d 669 (10th Cir.1991), *cert. denied,* 505 U.S. 1204, 112 S.Ct. 2991, 120 L.Ed.2d 869 (1992); *Velis v. Kardanis,* 949 F.2d 78 (3d Cir.1991); *Forbes v. Lucas (In re Lucas),* 924 F.2d 597 (6th Cir.), *cert. denied,* 500 U.S. 959, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991); *Moore v. Rain (In re Moore),* 907 F.2d 1476 (4th Cir.1990).

In deciding whether the ERISA plan in which Shumate participated was excluded from the estate under § 541(c)(2), the district court in *Shumate* relied on the pre-*Shumate* cases which narrowly interpreted § 541(c)(2). *Creasy v. Coleman Furniture Corp.,* 83 B.R. 404, 406-08 (W.D.Va.1988).[8] The district court thus inquired into whether the pension plan at issue, which satisfied the applicable requirements for ERISA,[9] qualified as a state spendthrift trust. *Creasy,* 83 B.R. at 407-09. The crux of the district court's inquiry focused on the degree of dominion and control which Shumate exercised over the pension plan. *Creasy,* 83 B.R. at 408-09 (citing *In re Lichstrahl,* 750 F.2d at 1490; *In re Goff,* 706 F.2d at 588). Shumate controlled 96% of the voting stock of the plan sponsor, and therefore had the power to terminate the plan and receive his interest in a lump sum. The district court concluded: "Shumate exercised such power over the ... pension trust that he could control it to suit his needs." *Creasy,* 83 B.R. at 408. As a result of Shumate's extensive control over the plan, the district court found that the plan was "inconsistent with the notion of spendthrift trusts," and held that it was not covered by

[8]The caption of the *Shumate* case in the district court was *Creasy v. Coleman Furniture Corp.*

[9]The pension plan satisfied the applicable ERISA requirements, and qualified for favorable tax treatment under the Internal Revenue Code (I.R.C.). *See* ERISA, § 201(d)(1), 29 U.S.C.A. § 1056(d) (requiring that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated"); I.R.C., 26 U.S.C.A. § 401(a)(13)(A) (conditioning qualification under ERISA and thus exemption from taxation on the non-transferability of pension benefits: "[a] trust shall not constitute a qualified trust under this section unless the plan of which trust is a part provides that benefits provided under the plan may not be assigned or alienated").

§ 541(c)(2).  *Id.*

The Fourth Circuit reversed the district court's holding in light of *In re Moore,* 907 F.2d 1476 (4th Cir.1990), which held that "applicable nonbankruptcy law" includes the law of ERISA.  *Shumate v. Patterson,* 943 F.2d 362, 363 (4th Cir.1991).  The Fourth Circuit stated that the district court's "focus on state spendthrift trust law, which looks to the reality behind the non-alienation provision, is misplaced."  *Id.* at 364.  The Fourth Circuit explained that because "ERISA requires a plan to have a non-alienation provision, ... [n]o more inquiry need be made to determine whether the trust is controlled by the settlor or the beneficiary, or whether they are the same person."  *Id.*

The Supreme Court affirmed the Fourth Circuit, holding that the phrase "applicable nonbankruptcy law" contained in § 541(c)(2) is not limited to state law.  504 U.S. at 758, 112 S.Ct. at 2246. The Court then determined that the "anti-alienation provision contained in the ERISA qualified plan at issue satisfie[d] the literal terms of § 541(c)(2)."  504 U.S. at 759, 112 S.Ct. at 2247. While the Court did not expressly address the control analysis upon which the district court so heavily relied, it did so implicitly in rejecting the argument that § 541(c)(2) exclusion should be limited to spendthrift trusts.  504 U.S. at 761-62, 112 S.Ct. at 2248. Significantly, because the facts of the case involved extensive control by Shumate, the Supreme Court's holding necessarily means that such control does not bar exclusion pursuant to § 541(c)(2).

Our analysis is supported by both the Ninth and Eighth Circuits.  In *In re Conner,* 73 F.3d 258 (9th Cir.), *cert. denied,*

--- U.S. ----, 117 S.Ct. 68, 136 L.Ed.2d 29 (1996), the Ninth Circuit construed *Shumate* as apparently discounting the significance of a debtor's control over the assets of the plan. 73 F.3d at 260 (9th Cir.1996); *accord In re Rueter,* 11 F.3d 850 (9th Cir.1993). The fact that the debtor could have withdrawn his plan benefits did not prevent the court from excluding the plan under § 541(c)(2). *In re Conner,* 73 F.3d at 260. In *Whetzal,* the Eighth Circuit rejected the trustee's argument that the debtor's option to withdraw the Civil Service retirement benefits in a lump sum should make the § 541(c)(2) exclusion inapplicable. 32 F.3d 1302. The court relied upon *Shumate* and its emphasis on the important congressional policy of protecting pension benefits. *Id.* at 1304.

In light of the foregoing precedent, and in light of the congressional concern about protecting pension benefits as recognized by the Supreme Court in *Shumate,* we conclude that debtor Meehan's potential access to the IRA funds is not sufficient to deprive her of the § 541(c)(2) exclusion.

## III. CONCLUSION

Because debtor's IRA is subject to a statutory restriction, it is excluded from the estate under § 541(c)(2). Accordingly, the judgment of the district court is reversed, and the case is remanded so that the district court may reverse the order of the bankruptcy court.

REVERSED and REMANDED.