In re Claire Marie BRAMLETTE,
Debtor.

Dale R.F. Goodman, Chapter
7 Trustee, Movant,

v.

Claire Marie Bramlette, Respondent.

No. 04–81321–PWB.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Sept. 30, 2005.

E.L. Clark, Clark & Washington, P.C., Atlanta, GA, for Debtor.

Dale R.F. Goodman, Goodman & Goodman, P.C., Atlanta, GA, for Trustee.

### ORDER WITH REGARD TO TRUSTEE'S OBJECTIONS TO EXEMPT PROPERTY

PAUL W. BONAPFEL, Bankruptcy Judge.

The Trustee objects to the Debtor's claims that her interests in an annuity

contract with First SunAmerica Life Insurance Company and a Roth Individual Retirement Account are excluded from property of the estate under 11 U.S.C. § 541(c)(2) or, alternatively, are exempt under O.C.G.A. § 44–13–100(A)(2)(E). The Court concludes that both interests are property of the estate but that only the Roth IRA is exempt.

## I. FACTS

In contemplation of her retirement, the Debtor, then 58 years old, entered into a Flexible Premium Deferred Annuity contract[1] with First SunAmerica Life Insurance Company about five months before filing her chapter 7 bankruptcy petition. She deposited an initial premium of $75,000, funded with the proceeds of the sale of her former residence. The contract permitted her to make additional contributions of $2,000 each, but she did not make any.

The contract provides for a guaranteed interest rate of 3.25% for the first year of the contract, an additional one-time bonus of 1% (resulting in an effective yield of 4.28% for the initial contract year), and a guaranteed rate of 3% thereafter.

The Debtor is both the Owner and the Annuitant. As the Owner, the Debtor has the right to name a different owner, assign her interest to another person, name or change the beneficiary, withdraw money, select an income payment method and designate its start date, receive annuity income payments, direct that income payments be made to another, and cancel the annuity and receive the withdrawal value.

As the Annuitant, the Debtor is entitled to receive monthly income payments commencing on the Annuity Date; the amount of the payments is determined by reference to an amortization schedule based on the accumulated value of her account. The Annuity Date is not clear. The annuity contract states that she may choose the annuity date, with the mandatory annuity date being her 90th birthday (July 6, 2036) if she does not select an earlier date. The schedule page of the contract, however, states that the Annuity Date is July 6, 2051, the Debtor believes that income payments will commence when she is 66 (July 6, 2012), and the Trustee asserts that the Debtor has the right to set a date when payments commence.

The Debtor may choose from several payment options, including income for life, with payments ending on her death; income for life with payments guaranteed for a fixed period so that they continue even if she dies before the end of the period; fixed amount income payments over a selected five to 20 year period; or equal periodic income payments for a predetermined number of years only. Thus, the Debtor may elect to receive her investment plus its earnings or payments based on her estimated life span.

The Debtor is allowed to make one withdrawal of up to ten percent of the annuity value from the account each year without penalty for the first six years. After six years, there are no withdrawal charges. The Debtor can cancel the contract and withdraw all of the funds at any time, although early withdrawal charges apply if she does so within the first six years.

Withdrawals are subject to federal and state income taxes. The withdrawals are treated as interest until earnings are exhausted and thereafter as a non-taxable return of premium. In addition, any taxable portion of withdrawals taken before

---

1. A copy of the contract is attached to the Debtor's Brief filed on June 4, 2005. [Docket No. 29]. The Trustee agrees that the facts stated in the Debtor's Brief are correct. Trustee's Response Brief, filed on June 17, 2005. [Docket No. 30].

the Debtor reaches the age of 59½ is subject to a ten percent federal tax penalty. 26 U.S.C. §§ 4974, 72(t).

The annuity has a current value of approximately $79,850. If it were terminated now, a surrender charge would be assessed of about $4,850, so the current cash value is approximately $75,000, the amount she paid.

The parties agree that the Debtor has a Roth IRA in the amount of $6,956 and that $5,379 of it is clearly exempt under the "wild card" exemption of O.C.G.A. § 44–13–100(a)(6). The dispute is over whether the $ 1,577 balance of the Roth IRA is exempt under O.C.G.A. § 44–13–100(a)(2)(E).

## II. THE ASSETS AS PROPERTY OF THE ESTATE

■ Section 541(c)(2) excludes from property of the estate a debtor's beneficial interest in a trust if there is a restriction on its transfer that "is enforceable under applicable nonbankruptcy law." The Debtor argues that the federal tax consequences on early withdrawal of funds under the annuity contract or from her Roth IRA impose a restriction on transfer of the assets that removes them from her estate under § 541(c)(2). The Debtor cites *Rousey v. Jacoway*, 544 U.S. 320, 125 S.Ct. 1561, 161 L.Ed.2d 563 (2005) in support of this argument.

*Rousey v. Jacoway* considered the tax penalty on early withdrawals from a traditional Individual Retirement Account authorized under 26 U.S.C. § 408 in determining whether the IRA qualified for exemption under the federal exemption law set forth in 11 U.S.C. § 522(d)(10)(E) as a payment "on account of age" under the type of contracts and plans specified therein. Although the Court concluded that the tax penalty, which does not apply to withdrawals made by the owner after age 59½, imposed a sufficient restriction on withdrawal that the payments were properly considered as being "on account of" the debtor's age, the Court did not address the question of whether the tax consequences imposed a restriction on transfer within the meaning of § 541(c)(2). The two issues are entirely different, and the *Rousey v. Jacoway* holding and rationale are not transportable to the § 541(c)(2) issue.

Nothing under federal or state law restricts the Debtor's rights to transfer her interests under the annuity contract or the Roth IRA. Subject to adverse tax consequences and early withdrawal charges, she has unfettered discretion to withdraw funds for any purpose or for no purpose at all. That different tax consequences or early withdrawal charges apply depending on what she chooses to do is irrelevant to whether there is a legal restriction that prevents the transfer. Consequently, the Court concludes that the Debtor's interests in the annuity contract and the Roth IRA are property of the estate and that § 541(c)(2) does not exclude them.

*Meehan v. Wallace (In re Meehan)*, 102 F.3d 1209 (11th Cir.1997), does not require a different result. In *Meehan*, the Eleventh Circuit ruled that a Georgia debtor's traditional IRA is excluded from property of the estate under § 541(c)(2) because it is exempt from garnishment under O.C.G.A. § 18–4–22(a). Because O.C.G.A. § 18–4–22(a) applies only to an individual retirement account within the meaning of 26 U.S.C. § 408 and Georgia law provides no similar protection for a Roth IRA established under 26 U.S.C. § 408A, there is no basis for excluding a Roth IRA from property of the estate.

## III. EXEMPTION OF THE ASSETS

The Debtor seeks to exempt the annuity contract and the Roth IRA under O.C.G.A.

§ 44–13–100(a)(2)(E). It provides that a debtor may exempt:

the right to receive—

(E) a payment under a pension, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.

Georgia law does not permit a debtor to elect the exemptions set forth in § 522(d) of the Bankruptcy Code. O.C.G.A. § 44–13–100(b).

The Court first considers whether the "right to receive a payment" that is exempt under § (a)(2)(E) includes the Debtor's right to receive future payments, *i.e.*, whether she may exempt her interest in the corpus of the assets, as opposed to current payments from them, which have not yet begun. Concluding that it does, the Court addresses whether each interest qualifies as a "pension, annuity, or similar plan or contract" providing for payment "on account of ... age" that she may exempt. The Court concludes that the annuity contract is not exempt but that the Roth IRA is, to the extent that it is reasonably necessary for the support of the Debtor or a dependent. Because the facts with regard to the Debtor's support have not been developed, the Court will direct further proceedings with regard to that issue.

**A. Exemption of Future Payments ("Corpus")**

█ The Debtor has not yet elected to receive payments under the annuity contract or from her Roth IRA. Bankruptcy courts in Georgia have ruled that the exemption under § (a)(2)(E) for a debtor's right to receive payment applies only to the income from the investment and does not permit exemption of the corpus when payments are not being made. *E.g., Wal-*lace v. Meehan (In re Meehan)*, 162 B.R. 367 (Bankr.S.D.Ga.1993), *aff'd,* 173 B.R. 818 (S.D.Ga.1994), *rev'd on other grounds,* 102 F.3d 1209 (11th Cir.1997); *Walker v. Miller (In re Miller),* 1990 WL 517059 (Bankr.S.D.Ga.1990); *In re Herndon,* 102 B.R. 893 (Bankr.M.D.Ga.1989); *In re Craddock,* 62 B.R. 583 (Bankr.N.D.Ga. 1986), *rev'd on other grounds,* Civ. Action No. C86–1815A (N.D.Ga. Dec. 31, 1986).

Under these decisions, because payments to the Debtor have not yet begun, the Debtor's interests in the annuity contract and the Roth IRA are only in the corpus, which she may not exempt under § (a)(2)(E). The Supreme Court's recent decision in *Rousey v. Jacoway,* 544 U.S. 320, 125 S.Ct. 1561, 161 L.Ed.2d 563 (2005), however, calls these decisions into question.

Georgia's exemption statute is modeled on the exemption provisions in 11 U.S.C. § 522(d) that a debtor may elect if state law does not expressly preclude their use. In particular, § (a)(2)(E) parallels § 522(d)(10)(E), with some differences discussed below. Consequently, the meaning of § 522(d)(10)(E) is highly relevant to construction of § (a)(2)(E) because the Georgia General Assembly's use of the same words as Congress indicates an intent that they have the same meaning. *See, e.g., Wallace v. Meehan (In re Meehan),* 162 B.R. 367 (Bankr.S.D.Ga.1993), *aff'd,* 173 B.R. 818 (S.D.Ga.1994), *rev'd on other grounds,* 102 F.3d 1209 (11th Cir. 1997); *In re Wommack,* 80 B.R. 578, 579–80 (Bankr.M.D.Ga.1987); *cf., e.g., Eilbert v. Pelican (In re Eilbert),* 162 F.3d 523, 525–26 (8th Cir.1998) (applying Iowa law).

In *Rousey,* the Supreme Court held that a traditional IRA qualifies for exemption under § 522(d)(10)(E). Although *Rousey* did not address the specific questions presented here, this Court reads the case (for reasons discussed below) as establishing

that the "right to receive payment" from a plan or contract specified in § 522(d)(10)(E) includes the current right to receive payment in the future and that, as such, the § 522(d)(10)(E) exemption applies to a debtor's interest in the corpus of a qualified asset. The question is whether the Georgia exemption statute that is modeled on § 522(d)(10)(E) has the same meaning.

Consideration of the issue begins with a review of the enactment of the two statutes. The Bankruptcy Reform Act of 1978 enacted the Bankruptcy Code as a comprehensive revision of the bankruptcy laws. Among other things, the legislation established exemptions as a matter of federal bankruptcy law under § 522(d) of the Bankruptcy Code and permitted a debtor to elect them unless state law specifically did not authorize their use. 11 U.S.C. § 522(b).

The bankruptcy law exemption relevant here is § 522(d)(10)(E), which permits the debtor to exempt, subject to an exception, the debtor's right to receive—

> a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.

Under the exception, a right to receive payment is not exempt if the plan or contract was established by an insider of the debtor that employed the debtor, the payment is on account of age or length of service, and the plan or contract does not qualify under specified provisions of the

Internal Revenue Code. 11 U.S.C. § 522(d)(10)(E)(i)—(iii).

The Bankruptcy Code became effective on November 1, 1979. In 1980, the Georgia General Assembly enacted the predecessor of O.C.G.A. § 44–13–100.[2] The Georgia law generally followed § 522(d), with certain exceptions and adjustments in monetary amounts that could be exempt, and prevented debtors domiciled in Georgia from electing the Bankruptcy Code exemptions. The Georgia version of the exemptions made two changes to the language of § 522(d)(10)(E). First, Georgia omitted references to "stock bonus" and "profitsharing" plans or contracts. Second, it eliminated the exception for certain non-qualified plans.

The Georgia exemption statute as relevant here has been amended twice, apparently in response to judicial decisions. (A third amendment in 2001 changed monetary amounts and increased the exemption for a residence titled solely in one spouse but did not amend any of the provisions considered here.[3]) The Court will review the decisions and amendments chronologically.

In 1986, the Bankruptcy Court for the Northern District of Georgia applied § (a)(2)(E) prior to its amendment in *In re Craddock*, 62 B.R. 583 (Bankr.N.D.Ga. 1986), *rev'd on other grounds*, Civ. Action No. C86–1815A (N.D.Ga. Dec. 31, 1986). At issue there was the debtor's interest in the profit-sharing plan of her employer in which she had no current right to payment. The bankruptcy court ruled that, although profitsharing plans were not included in the Georgia statute, the plan was actually a pension plan because its intent was "to provide its participants with a

---

**2.** Act No. 1076, 1980 Ga. Laws 952. The statute was effective only until July 1, 1981. Id. at § 4, 1980 Ga. Laws at 955. The exemption provisions were reenacted, prior to their

expiration, in 1981. Act No. 479, 1981 Ga. Laws 626.

**3.** Act No. 220, 2001 Ga. Laws 745.

pension rather than primarily a share in the profits" of the employer. *Id.* at 586. Nevertheless, the court ruled that the debtor could not exempt her interest in the plan because § (a)(2)(E) "only exempts a *payment* under such a plan." *Id.* The court relied on *Clark v. O'Neill (In re Clark)*, 711 F.2d 21 (3d Cir.1983), which had interpreted § 522(d)(10)(E) this way. The district court reversed on the ground that the anti-alienation provisions in the plan and federal law excluded it from property of the estate under 11 U.S.C. § 541(c)(2). *See In re Griggs,* 101 B.R. 393, 395 (Bankr.M.D.Ga.1989) (explaining unpublished district court decision).

In 1988, the General Assembly added what is now § 44-13-100(a)(2.1)(A)—(C).[4] The amendment added an exemption for a "debtor's aggregate interest in any funds or property held on behalf of the debtor, and not yet distributed to the debtor, under any retirement or pension plan or system" meeting the requirements of paragraphs (A), (B), or (C). Generally, those paragraphs require that the plan or system be established by the debtor's employer. *See Walker v. Miller (In re Miller)*, 1990 WL 517059 (Bankr.S.D.Ga.1990). The amendment also provided that the exemption of periodic payments under such a plan would continue to be governed by § (a)(2)(E).

In 1993, the Bankruptcy Court for the Southern District of Georgia ruled that a traditional IRA could not be exempt under either § (a)(2)(E) or § (a)(2.1). *Wallace v. Meehan (In re Meehan)*, 162 B.R. 367 (Bankr.S.D.Ga.1993), *aff'd,* 173 B.R. 818 (S.D.Ga.1994), *rev'd on other grounds,* 102 F.3d 1209 (11th Cir.1997). The bankruptcy court determined that the self-funded IRA could not be exempt under § (a)(2.1)

because it was not financially supported in whole or in part by the debtor's employer. *Id.* at 372. It could not be exempt under § (a)(2)(E), the court ruled, because § (a)(2)(E) applies only to periodic payments, not the corpus. *Id.* at 373.

With regard to the § (a)(2)(E) issue, the bankruptcy court noted that the "deliberate exclusion of [stock bonus and profit-sharing] plans from the Georgia statute suggests that any interpretation of 'similar plan or contract' under (2)(E) should be narrowly construed and limited to those containing the characteristics of pensions and annuities." *Id.* at 372. The court continued, *id.* at 372–73 (footnote omitted):

> One of the key characteristics of both a pension and annuity is regularity of payment.... Partially in recognition of this fact, cases interpreting similar state laws and § 522(d)(10)(E) have held that an IRA is not a "similar plan" to a pension or annuity because "annuities and pensions contemplate only future periodic payments whereas an IRA is payable in a lump sum." *See In re Herbert,* 140 B.R. 174 (Bankr.N.D.Ohio 1992) (quoting *In re Spandorf,* 115 B.R. 415, 416 (Bankr.D.Conn.1990) and citing *In re Innis,* 62 B.R. 659, 660 (Bankr. S.D.Cal.1986); *In re Gillett,* 46 B.R. 642, 643–44 (Bankr.S.D.Fla.1985); *In re Fichter,* 45 B.R. 534, 537–38 (Bankr. N.D.Ohio 1984); *In re Peeler,* 37 B.R. 517, 518 (Bankr.M.D.Tenn.1984)).

> ...[W]ith IRA's or other plans in which the debtor is entitled to a lump sum payment or which the debtor otherwise has the ability to obtain the funds at any time, there is no established future stream of income and without this stream of income the purpose of the

---

4. Act No. 1432, 1988 Ga. Laws 1756. Technical corrections were made in 1989. Act

No. 7, § 44(3), 1989 Ga. Laws 14, 38.

exemption statute is not fulfilled and debtors are not entitled to shelter the fund from creditor claims.

The district court affirmed, 173 B.R. 818 (S.D.Ga.1994), but the Eleventh Circuit reversed on the ground that an IRA was excluded from property of the estate under § 541(c)(2) because it was not subject to creditor claims under O.C.G.A. § 18–4–22. 102 F.3d 1209 (11th Cir.1997). The Eleventh Circuit thus did not reach the exemption issue.

In 1995, prior to the Eleventh Circuit's ruling, the General Assembly amended the exemption statute to permit exemption of traditional IRAs.[5] It did so by adding a new section (F) to § (a)(2) and a new section (D) to § 2.1. Both restrict their applicability to an individual retirement account "within the meaning of Title 26 U.S.C. Section 408." By their express language, therefore, § (a)(2)(F) and § (a)(2.1)(D) do not apply to Roth IRAs, which are governed by 26 U.S.C. § 408A.

In distinguishing between exempt income payments and non-exempt corpus, the Georgia bankruptcy courts relied in part on decisions of some federal courts construing § 522(d)(10) or similar state law in the same way. The majority of courts, however, declined to make such a distinction and ruled that the right to payment included the current right to receive future payments. *See* William Houston Brown, Lawrence R. Ahern, III, and Nancy Fraas MacLean, BANKRUPTCY EXEMPTION MANUAL § 5.11 (2005 ed.).

*Carmichael v. Osherow (In re Carmichael)*, 100 F.3d 375, 379–80 (5th Cir.1996), illustrates the majority view. There, the trustee argued that the debtor could not exempt his IRA account because, among other things, the debtor was not receiving "present payments." The Fifth Circuit recognized a distinction between "a debtor's right to receive a payment presently (the Trustee's contention) and a debtor's 'right to receive . . . a payment' (the plain words of the section) which includes both (1) a debtor's *presently* vested right to receive a payment *in the future* and (2) a debtor's right to receive a payment 'presently,' 'currently,' or 'immediately.'" *Id.* at 379. The court continued, *id.* at 379–80;

> We decline the Trustee's invitation to read into [§ 522(d)(10)(E) ] a restriction to the right to receive payments presently, to the exclusion of a present right to receive payments in the future. The language of the section does not include words like "presently," "currently," or "immediately." Indeed, to infer such would be to exclude from consideration *all* deferred compensation and retirement accounts that have not yet ripened to current payment status. Again, that which is exempt is the *right* to receive payments, whether future or present, not merely the current receipt of payments.

The development of Georgia law with regard to exemptions under § (a)(2)(E) and (F) and § (a)(2.1) may be summarized as follows. Section (a)(2)(E) was modeled after Bankruptcy Code § 522(d)(10)(E) except that the Georgia statute omitted (1) "stock bonus" and "profitsharing" plans and (2) the exception in § 522(d)(10)(E) that limited exemption of such plans to those qualifying under federal tax law if established by an insider employer. In response to *Craddock's* ruling that § (a)(2)(E) did not apply to a debtor's right to receive future payments, under a pension plan, Georgia added § (a)(2.1) to permit exemption of the debtor's interest in employer-sponsored plans. Thereafter, Georgia bankruptcy courts distinguished between the exemption of *payments* under

5. Act No. 267, 1995 Ga. Laws 347.

§ (a)(2)(E) and the exemption of *corpus* under § (a)(2.1), based in part on § (a)(2)(E)'s omission of stock bonus and profitsharing plans and in part on decisions of other federal courts adopting the minority view of § 522(d)(10)(E) or similar state provisions. *Wallace v. Meehan (In re Meehan),* 162 B.R. 367 (Bankr.S.D.Ga. 1993), *aff'd,* 173 B.R. 818 (S.D.Ga.1994), *rev'd on other grounds,* 102 F.3d 1209 (11th Cir.1997); *Walker v. Miller (In re Miller),* 1990 WL 517059 (Bankr.S.D.Ga. 1990); *In re Herndon,* 102 B.R. 893 (Bankr.M.D.Ga.1989). Finally, in response to the decisions of the bankruptcy and district courts in *Meehan,* the statute was amended to specifically include traditional IRAs under § (a)(2)(F) and § (a)(2.1)(D), which was of little importance after the Eleventh Circuit determined in *Meehan* that IRAs were excluded under § 541(c)(2).

The question is whether the interpretation of § (a)(2)(E) as exempting only the right to receive current payments is proper in view of the Supreme Court's decision in *Rousey v. Jacoway,* — U.S. —, 125 S.Ct. 1561, 161 L.Ed.2d 563 (2005). The issue in *Rousey* was whether the debtors' rights to receive payments from their IRAs were exempt under § 522(d)(10)(E). In framing the issue, the Supreme Court explained that the statute's language imposed three requirements for invocation of the exemption under this statute. First, the right to receive payment must be from a "stock bonus, pension, profitsharing, annuity, or similar plan or contract." Second, the right to receive payment must be "on account of illness, disability, death, age, or length of service." Third, the right to receive payment may be exempted only "to the extent" that it is "reasonably necessary to support" the debtor or dependents. Only the first two were before the Court. 125 S.Ct. at 1566.

The Court first held that the debtors' rights to receive payment under their IRAs were "on account of age" because the tax penalty for withdrawals prior to age 59½ imposed a restriction on their access to the funds that was causally connected to age. 125 S.Ct. at 1567–68. The Court then determined that an IRA is a "similar plan or contract" because, like the others listed in the statute, it provides income that substitutes for wages. 125 S.Ct. at 1569–70.

*Rousey* did not consider whether the "right to receive" a "payment" under an included plan is limited to current payments. Arguably, therefore, that issue is still open. But the Court did not include such a requirement in its listing of the applicable requirements for invoking the § 522(d)(10)(E) exemption, and the Court specifically observed that the debtors had the right to receive payment of the entire balance of their IRAs, subject to a tax penalty. 125 S.Ct. at 1567. This Court reads *Rousey,* therefore, as establishing that § 522(d)(10)(E) does not exclude a debtor's exemption of the corpus of an asset that is within its coverage. As noted above, this interpretation is consistent with the majority rule in the lower federal courts.

Because *Rousey* thus determines what Congress meant in § 522(d)(10), the question is whether the General Assembly meant the same thing when it used the same language in § (a)(2)(E). There are two arguments for the proposition that it did not.

The first is based on the omission of "stock bonus" and "profitsharing" plans from the language of § (a)(2)(E). As noted by the bankruptcy court in *Meehan,* this "deliberate exclusion ... suggests that any interpretation of 'similar plan or contract' under (2)(E) should be narrowly construed and limited to those containing

the characteristics of pensions and annuities," which are generally characterized by future periodic payments. 162 B.R. at 372–73. On the other hand, the omission may have been intended only to exclude plans that do not necessarily provide substitutes for retirement income. *See In re Craddock,* 62 B.R. 583, 586 (Bankr.N.D.Ga. 1986). Moreover, as the annuity contract in this case illustrates, an annuity may be payable in a lump sum. Consequently, this Court does not find that the omission of stock bonus and profitsharing plans evidences an intent to limit application of § (a)(2)(E) to current payments.

A second argument is that subsequent amendments of the statute recognize the distinction between the exemption of periodic payments in § (a)(2)(E) and the exemption of corpus in § (a)(2.1). The addition of § (a)(2.1)(A)—(C) expressly recognizes this, and the provision for the exemption of IRAs by amending both § (a)(2) and § (a)(2.1) to separately exempt income and corpus likewise evidences an intent to recognize the distinction the Georgia bankruptcy courts had made. By amending the statute in this way, the argument goes, the General Assembly accepted the bankruptcy courts' interpretations as the proper meaning of its original work.

But § (a)(2)(E) has not been changed since its original enactment. The amendments were clearly intended to broaden the availability of exemptions under Georgia law and appear to have come in response to specific decisions of the bankruptcy courts. The Court cannot conclude that the General Assembly intended to *limit* the scope of § (a)(2)(E) by adding other provisions that *increased* exemptions.

The Court concludes, therefore, that *Rousey's* interpretation of the meaning of what Congress meant in 1978 when it enacted § 522(d)(10) also determines what the General Assembly meant in 1980 when it used the same words in § (a)(2)(E). Consequently, the exemption in § (a)(2)(E) permits a debtor to exempt the corpus in a "similar plan or contract" to which it applies.

The Court also concludes that the specific provision for the exemption of a traditional IRA in § (a)(2)(F) and § (a)(2.1)(D) does not preclude a conclusion that a traditional or Roth IRA is exempt under § (a)(2)(E) if it is otherwise within § (a)(2)(E). Roth IRAs did not become available until amendment of the Internal Revenue Code in 2001. By amending the statute to specifically exempt IRAs in 1995, therefore, the General Assembly could not have intended to exclude other types of IRAs under other provisions.

### B. Exemption of the Annuity Contract

■ Construing exemption statutes with language similar to § 44–13–100(a)(2)(E), courts have ruled that a debtor's interest in an investment plan or contract may qualify as a "pension, annuity, or similar plan or contract" if it is a "contract to provide benefits in lieu of earnings after retirement, whether funded by the employer or purchased by the employee or the self-employed .... or a plan created to fill or supplement a wage or salary void." *Andersen v. Ries (In re Andersen),* 259 B.R. 687, 691 (8th Cir. BAP 2001) (construing § 522(d)(10)(E)). *Accord, see, e.g., Eilbert v. Pelican (In re Eilbert),* 162 F.3d 523, 527 (8th Cir.1998) (construing Iowa law); *In re Weidman,* 284 B.R. 837, 839 (Bankr.E.D.Mich.2002) (construing § 522(d)(10)(E)), aff'd, 299 B.R. 429 (E.D.Mich.2003); *In re Wommack,* 80 B.R. 578 (Bankr.M.D.Ga.1987) (applying O.C.G.A. § 44–13–100(a)(2)(E)).

In making this determination, the courts examine "the facts and circumstances surrounding the purchase of the contract, as well as the nature and contents of the contract." *Andersen*, 259 B.R. at 691. In *Andersen*, the court listed the following questions as relevant to the inquiry, *id.* at 691–92:

\* Were the payments designed or intended to be a wage substitute?

\* Were the contributions made over time? The longer the period of investment, the more likely the investment falls within the ambit of the statute and is the result of a long standing retirement strategy, not merely a recent change in the nature of the asset.

\* Do multiple contributions exist? Investments purchased in isolation, outside the context of workplace contributions, may be less likely to qualify as exempt.

\* What is the return on investment? An investment which returns only the initial contribution with earned interest or income is more likely to be a nonexempt investment. In contrast, investments which compute payments based upon the participant's estimated life span, but which terminate upon the participant's death or the actual life span, are akin to a retirement investment plan. That is, will the debtor enjoy a windfall if she outlives her life expectancy? Is she penalized if she dies prematurely?

\* What control may the debtor exercise over the asset? If the debtor has discretion to withdraw from the corpus, then the contract most closely resembles a nonexempt investment.

\* Was the investment a prebankruptcy planning measure? In this regard, the court may examine the timing of the purchase of the contract in relation to the filing of the bankruptcy case.

Application of these factors to the annuity contract in this case requires the conclusion that it is not an exempt "pension, annuity, or similar plan or contract" under O.C.G.A. § 44–13–100(a)(2) because it was not a contract to provide benefits in lieu of earnings after retirement or a plan created to fill or supplement a wage or salary void. Although the debtor purchased the annuity in contemplation of her retirement, she made only one contribution shortly before the filing of her bankruptcy case, has discretion to withdraw from the corpus, and currently has the option to decide at a later time to receive a fixed return on her investment. The circumstances clearly demonstrate that the purchase of the annuity was a recent change in the nature of her assets rather than the result of a long standing retirement strategy. Under these circumstances, the Court concludes that the annuity contract does not qualify as a "pension, annuity, or similar plan or contract" under O.C.G.A. § 44–13–100(a)(2)(E). The Debtor, therefore, may not exempt it.

### C. Exemption of the Roth IRA

The Roth IRA is similar to the annuity contract in that the debtor has discretion, subject to a tax penalty, to withdraw the funds in the account. It also resembles a nonexempt investment in that she will receive a fixed return. But a Roth IRA is clearly a retirement vehicle, created by Congress with the express purpose of enabling individuals to save for retirement by making contributions over time. As such, a Roth IRA clearly qualifies as a "plan created to fill or supplement a wage or salary void." *Andersen*, 259 B.R. at 691.

The Supreme Court's decision in *Rousey v. Jacoway*, 544 U.S. 320, 125 S.Ct. 1561, 161 L.Ed.2d 563 (2005), resolves any doubt about the inclusion of a Roth IRA within

the meaning of § (a)(2)(E). A Roth IRA, unlike a traditional IRA, does not require that distributions begin at age 70 ½ or impose a tax penalty if distributions do not commence at that age. 26 U.S.C. § 408A(c)(5). Nevertheless, both a Roth IRA and a traditional IRA impose a tax penalty if withdrawals are made before age 59½ and provide advantageous tax treatment for qualified distributions. Tax on qualified distributions from a traditional IRA is deferred, whereas there is no tax on qualified distributions from a Roth IRA, which are excluded from gross income. 26 U.S.C. § 408A(d). Although a Roth IRA does not have all of the features of a traditional IRA that the Supreme Court noted in *Rousey* as demonstrating that income from IRAs substitutes for wages lost upon retirement and distinguishes them from typical savings accounts, 125 S.Ct. at 1569, the essential purposes and effects of the two types of what are, after all, *retirement accounts,* are identical. There is no principled reason to distinguish between the two types of accounts for purposes of determining whether they meet the test for exemption under § 522(d)(10) and its Georgia counterpart, O.C.G.A. § 44–13–100(a)(2)(E).

■ The reasoning of *Rousey* likewise requires a conclusion that the Debtor's right to receive payments under the Roth IRA are "on account of age." In this regard, *Rousey* concluded that the tax penalty imposed on withdrawals from a traditional IRA prior to age 59½ effectively prevented access to funds in the account and that, consequently, the right to payment was on account of age. 125 S.Ct. at 1567. Because the same tax penalty applies to a Roth IRA, the Debtor's right to payment from her Roth IRA is likewise "on account of age."

■ The Court concludes, therefore, that the Debtor's interest in her Roth IRA is exempt under O.C.G.A. § 44–13–100(a)(2)(E). The statute, however, limits the exemption to the extent "reasonably necessary for the support of the debtor and any dependent of the debtor." The Court has received no evidence on this issue. Thus, although the Court will overrule the Trustee's objection to the extent it asserts that the Roth IRA is not exemptible under § (a)(2)(E), the Court will permit the Trustee ten days from the date of entry of this Order within which to file a request for an evidentiary hearing on the support issue. If no such request is filed, the Court will deem the Trustee to have conceded that the Debtor's retention of the Roth IRA is reasonably necessary for her support. If a request is filed, the Court will schedule an evidentiary hearing.

## IV. CONCLUSION

For reasons set forth above, the Court sustains the Trustee's objection to the Debtor's claim of an exemption in her Flexible Premium Deferred Annuity Contract with First SunAmerica Life Insurance Company. The Debtor is not entitled to exempt this asset under O.C.G.A. § 44–13–100(a)(2)(E).

The Trustee's objection to the Debtor's claim of an exemption in her Roth IRA is overruled to the extent it is based on the argument that it is not subject to exemption under O.C.G.A. § 44–13–100(a)(2)(E). The Debtor may exempt her Roth IRA to the extent that it is reasonably necessary for her support or the support of a dependent. If the Trustee desires an evidentiary hearing on this issue, the Trustee shall file a request for an evidentiary hearing within ten days from the date of entry of this Order. The Court will thereafter schedule an evidentiary hearing to determine this issue. If no request is filed, the Court will conclude that the Trustee does

not contest the Debtor's exemption of the Roth IRA on this ground.

In view of the possibility of further proceedings with regard to whether the Roth IRA is reasonably necessary for the support of the Debtor or a dependent, this Order will constitute the Court's findings of facts and conclusions of law with regard only to the matters addressed herein. As such, it is not a final order or judgment on any of the Trustee's objections. The Court will enter a final judgment on a separate document in accordance with FED. R. BANKR. P. 9021 following a resolution of the remaining issue of whether retention of the Roth IRA is reasonably necessary for the support of the Debtor or a dependent.

## FINAL JUDGMENT WITH REGARD TO TRUSTEE'S OBJECTIONS TO EXEMPT PROPERTY

The Court entered an Order with regard to the Trustee's Motion to Disallow Exemptions [Docket No. 23] on September 30, 2005 [Docket No. 31]. The Order included the Court's findings of facts and conclusions of law with regard to all issues except whether the Debtor's Roth IRA is reasonably necessary for her support. The Order directed the Trustee to file a request for an evidentiary hearing within 10 days if she desired to contest this issue. Because the Trustee has not requested an evidentiary hearing on this issue, the Court deems the Trustee to have conceded that the Debtor's Roth IRA is reasonably necessary for her support.

Accordingly, in accordance with the Court's findings of fact and conclusions of law set forth in its September 30 Order and the Trustee's concession that the Roth IRA is reasonably necessary for the Debtor's support, it is hereby **ORDERED and ADJUDGED** as follows:

1. The Court sustains the Trustee's objection to the Debtor's claim of an exemption in her Flexible Premium Deferred Annuity Contract with First SunAmerica Life Insurance Company. The Debtor is not entitled to exempt the Annuity Contract under O.C.G.A. § 44–13–100(a)(2)(E).

2. The Court overrules the Trustee's objection to the Debtor's claim of an exemption in her Roth IRA. The Debtor is entitled to exempt the Roth IRA under O.C.G.A. § 44–13–100(a)(2)(E).