In re Lou Ann CASSELL, Debtor.

Robert B. Silliman, Trustee, Movant,

v.

Lou Ann Cassell, Respondent.

No. 10–74119–WLH.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Dec. 7, 2010.

Eric E. Thorstenberg, Atlanta, GA, for Debtor.

## ORDER ON TRUSTEE'S OBJECTION TO EXEMPTION

WENDY L. HAGENAU, Bankruptcy Judge.

The Trustee's Objection to Exemption [Docket No. 18] came before the Court for hearing on September 9, 2010, at which the Trustee and the Debtor were represented by counsel. At the hearing, both parties presented evidence. At the conclusion of the hearing, the Court requested briefs regarding the parties' legal positions, which have now been submitted and reviewed by the Court. After a review of the pleadings and briefs, the evidence submitted to the Court and the bankruptcy case docket, the Court rules that the annuity issued by National Life Insurance Company and identified in the Debtor's Schedules as exempt is an annuity exemptible under O.C.G.A. § 44–13–100(a)(2)(E) and the payments under such annuity are on account of age. The Court further determines that any payments to a beneficiary under such annuity are not reasonably necessary for the support of the Debtor or any dependent of the Debtor, and the Court directs the Debtor to irrevocably change the beneficiary of the annuity to the bankruptcy estate of the Debtor. The parties did not submit evidence as to whether the payments under the annuity are reasonably necessary for the support of the Debtor or dependents of the Debtor. The Trustee may request a hearing, and both parties may submit evidence on that point. The following constitutes the Court's Findings of Fact and Conclusions of Law under Fed. R. Bankr.P. 7052 made applicable to this proceeding by Fed. R. Bankr.P. 9014.

### FACTS

The Debtor filed this chapter 7 bankruptcy case on May 11, 2010. On the same day, her wholly-owned business, J & L

Arborists, LLC [1], also filed a petition under chapter 7 of the United States Bankruptcy Code. The Debtor, in her personal case, listed as an asset an annuity with National Life Insurance Co. The value was initially listed at $114,000 but later amended to $220,000. The full value of the annuity has been claimed as exempt by the Debtor. The Trustee objects to the Debtor's proposed exemption of this annuity on the grounds that it is not the type of annuity protected under O.C.G.A. § 44–13–100(a)(2)(E).

The evidence shows that the Debtor's aunt lived with her for some period of time, but died on Thanksgiving evening of 2008. As a result of the aunt's death, the Debtor inherited $220,000, which was previously in the aunt's Shearson account. At the time of the Debtor's aunt's death, the Debtor's business (J & L Arborists) and the Debtor were insolvent on a balance sheet basis. The Debtor testified, however, that she continued to pay her debts and the debts of the company as they came due. After the death of the Debtor's aunt, the Debtor consulted with attorneys and accountants and solicited advice on the best use of the funds received from her aunt. The Debtor purchased the annuity at issue on May 1, 2009. She testified that the purpose of the annuity purchase was to provide income for herself since she was 65 at the time and knew that she could not continue working in the tree business forever. Moreover, she noted the tree business had been declining. The Debtor testified she did not want to burden her children, and she thought the annuity would replace income and enable her to fund nursing home care if necessary.

The annuity the Debtor purchased is a single-premium immediate fixed annuity which is non-participating. At the time the Debtor purchased the annuity, she had six payment options. The Debtor selected the payment option of "life annuity with guaranteed period", which provided that she would receive $1,389.14 per month beginning June 1, 2009 and continue for her life. If the Debtor died prior to the expiration of the 10–year guaranteed period, the payments would continue to be made only for the guaranteed period to her beneficiary. The single premium for the annuity was the entire $220,000 inherited from her aunt. The Debtor is the owner and payee of the annuity. She has designated her children as the beneficiaries, but, under the terms of the annuity, the designation is revocable. Other details regarding the terms of the annuity will be discussed in the context of the Court's ruling below.

### LAW

Under Section 522(b)(2) of the Bankruptcy Code, states can elect to "opt out" of the exemptions provided by the Bankruptcy Code, and instead provide their own exemptions. Georgia has "opted out" of the Bankruptcy Code exemptions and O.C.G.A. § 44–13–100 governs the exemptions available to a debtor in bankruptcy in Georgia. As many courts have recognized, the purpose of the exemptions under the Bankruptcy Code, as replaced by various state exemptions, is to provide the debtor with a fresh start and they are therefore to be construed liberally. *See In re Michael,* 339 B.R. 798, 801 (Bankr. N.D.Ga.2005). Under Fed. R. Bankr.P. 4003(c), the burden is on the party objecting to the exemption, here the Trustee, to

---

1. J & L Arborists, LLC was in the business of cleaning up damaged trees, particularly from

catastrophic storms like Hurricane Katrina.

establish the objection by a preponderance of the evidence.

■ Under O.C.G.A. § 44–13–100(a), the following property may be exempted:
(2) the debtor's right to receive:
... (E) a payment under a pension, annuity or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor;
...

This exemption includes the right to receive future payments and as such includes the Debtor's interest in the corpus. *In re Bramlette,* 333 B.R. 911, 916 (Bankr. N.D.Ga.2005). The Court has found no cases under Georgia law interpreting this section, and neither of the parties has cited any to the Court. This section of the Georgia exemptions is similar to 11 U.S.C. § 522(d)(10)(E). While the Bankruptcy Code exemptions exempt stock bonus plans and profit sharing plans, the Georgia exemptions do not. Moreover, the Bankruptcy Code exemptions exclude from exemption plans established by an insider that provide for payments on account of age or length of service and that do not qualify under certain specific Internal Revenue Code provisions. The Georgia exemption at issue does not exclude such plans from possible exemption.[2] In order to be exempt under Georgia law, the annuity claimed by the debtor (i) must be the type of annuity which is exemptible under O.C.G.A. § 44–13–100(a)(2)(E), (ii) must provide payments on account of age (the other possibilities being irrelevant here), and (iii) must be reasonably necessary for the support of the debtor or its dependents. Because of the similarity to the Bankruptcy Code exemption, cases interpreting the Bankruptcy Code exemption have provided guidance to the courts in interpreting similar state law provisions.

## PLAN COVERED BY EXEMPTION

■ Most of the reported decisions on the exemption of annuities turn on whether the particular plan or contract qualifies as a "pension, annuity or similar plan or contract". The courts are fairly uniform in holding that simply attaching the title "annuity" to a plan or contract does not make it the type of annuity that Congress (and presumably the State) intended to exempt. *See In re Michael,* 339 B.R. at 803. Rather, the courts look at whether it is a "contract to provide benefits in lieu of earnings after retirement, whether funded by the employer or purchased by the employee or the self-employed ... or a plan created to fill or supplement a wage or salary void." *Andersen v. Ries (In re Andersen),* 259 B.R. 687, 691 (8th Cir. BAP 2001); *In re Bramlette,* 333 B.R. at 920. The Supreme Court in *Rousey v. Jacoway,* 544 U.S. 320, 125 S.Ct. 1561, 161 L.Ed.2d 563 (2005), in construing Section 522(d)(10)(E) of the Bankruptcy Code held that all the plans enumerated in that section "provide income that substitutes for wages." *Id.* at 331, 125 S.Ct. 1561. To determine if a particular plan or contract "provides income that substitutes for wages", courts examine "the facts and circumstances surrounding the purchase of the contract, as well as the nature and contents of the contracts." *Andersen,* 259

---

**2.** O.C.G.A. § 44–13–100(a)(2.1)(C) permits exemption of undistributed funds under a retirement or pension plan "[t]o the extent permitted by the bankruptcy laws of the United States". This section then picks up the exclusion of plans established by an insider where payments are made on account of age or length of service. It was this section under which the annuity in *In re Michael* was analyzed, and provided an alternative basis for the court's denial of the exemption. 339 B.R. at 804.

B.R. at 691. The following factors and questions have been identified as relevant:

Were the payments designed or intended as a wage substitute?

Were the contributions made over time?

Do multiple contributions exist?

What is the return on investment?

What control may the debtor exercise over the asset?

Was the investment a pre-bankruptcy planning measure?

See Id.; see also Bramlette, 333 B.R. at 921. As with most "factor tests", there is no magic number of questions to answer correctly. Instead, the Court must evaluate all the factors and circumstances in reaching a conclusion. The Court will examine each of these questions.

***Wage Substitute.***

 The Supreme Court has found that the common thread among all of the plans exemptible under 11 U.S.C. § 522 (and therefore with similar reasoning O.C.G.A. § 44–13–100) is they all provide income that substitutes for wages. The Court finds the Debtor did intend the annuity at issue in this case to be a substitute for wages. The Debtor testified it was her intention that the annuity be a replacement of income for her, given her advanced age. The Debtor recognized she could not continue in the tree business as she aged. Her age, and possible support for her in her older years, was fresh on her mind with the recent death of her aunt, for whom she had cared for some period of time. The Debtor testified of her concern about who would take care of her in her advanced age, and that she did not want to become a burden to her children. She specifically identified having funds available for nursing home care as one of the considerations in deciding to purchase the annuity.

 Moreover, the form of the annuity which she selected is consistent with this intent. The annuity at issue here is fixed or straight, not variable, and provides guaranteed income for life. Black's Law Dictionary defines a variable annuity as "a contract calling for payments to the annuitant in varying amounts depending on the success of the investment policy of the insurance company", as distinguished from a straight or fixed annuity under which a fixed amount is paid on a periodic basis. Thus, the Debtor chose an annuity that did not depend on an investment policy. The method of payment selected by the Debtor (life with guaranteed period) mirrors the type of payments one might receive from an employer-established retirement fund and evidences the Debtor's intent to have funds over her entire life and not just over a limited period of time.

The Trustee makes much of the fact that the Debtor had multiple payment options from which to select when she purchased the annuity. The Debtor certainly could have selected a payment option such as "life with refund option", "annuity certain", "joint life and survivor annuity", or "joint life and survivor annuity with guaranteed period". However, the Debtor did not choose any of those options. Moreover, she did not choose a variable annuity which would reflect the actual investment of funds and a return on her investment. The Court does not see that having the choice of the type of retirement vehicle in which to participate eliminates the vehicle as a retirement plan, if it otherwise qualifies. Had the Debtor chosen to put money in an IRA or some other contract or plan as to which there is no disagreement as to its exemptibility, surely the fact the choice was made would not be enough to eliminate the exemption. It is not the ability to choose in and of itself which raises questions as to the true nature of the investment, but the actual choice made. The

facts of the *Michael* and *Bramlette* cases are therefore distinguishable, because in each of those cases the debtor still had the choice as to how to receive the funds. In those cases, the debtor could have chosen payment options which may have made those investment vehicles look less like a retirement plan and more like an insurance program or an investment program. Moreover, in the *Michael* case, the annuity at issue was a variable annuity, again looking more like an investment than a retirement plan. *In re Michael*, 339 B.R. at 800. Similarly, in the *Bramlette* case, the annuity carried a guaranteed rate of return, *In re Bramlette*, 333 B.R. at 913, also looking more investment like.

The Trustee argues that the source of the funds acquiring the annuity must be from wages for the annuity to qualify for the exemption. The Trustee cites two cases for this proposition; however, the Court disagrees with the Trustee's interpretation. In the case of *Weidman v. Shapiro*, 299 B.R. 429 (E.D.Mich.2003), the annuity at issue *was* the inheritance. Therein, the debtor inherited the annuity and argued that the payments from the annuity were on account of her mother's death. The court rightfully concluded that the annuity was not established for the purposes of replacing lost wages and further ruled that the mother's death could not be the trigger for an exemptible plan under the Bankruptcy Code exemptions. In the case of *In re Green*, 2007 WL 1031677, 2007 Bankr.Lexis 1182 (Bankr. E.D.Tenn.2007), the court concluded that payments made to a debtor under the terms of an annuity that resulted from a structured settlement of the debtor's wrongful death claim for the death of his minor son were not exemptible. Again, the court noted that the payments under the annuity were not set up as a substitute for wages. The payments were instead attributable to the wrongful death of the

debtor's son, upon whom he was not dependent. As discussed in more detail below in connection with "contributions over time" and "multiple contributions", to limit the exemption based on the source of the funds, as opposed to the type of plan, would penalize persons who may not have otherwise been able to obtain retirement benefits through their place of employment for some reason. The Court declines to so hold. The Court, therefore, concludes that the Debtor did intend the annuity to be a substitute for wages.

**Contributions over Time and Multiple Contributions.**

 Courts next ask over what period of time the contributions were made. "The longer the period of investment, the more likely the investment falls within the ambit of the statute and is the result of a long-standing retirement strategy, not merely a recent change in the nature of the asset." *See In re Andersen*, 259 B.R. at 691. Likewise, "[i]nvestments purchased in isolation, outside the context of workplace contributions, may be less likely to qualify as exempt." *Id.* The Eighth Circuit BAP which enumerated these factors continued on as follows:

> However, neither of these facts are determinative nor deserving of great weight in this situation because the debtor had no other opportunity through her employment to obtain a pension plan over time. Her employer did not offer her that benefit. If the court were to construe the statute as precluding any retirement benefit from qualifying as one merely because it was purchased with an inheritance or other lump sum method, all persons who could not obtain retirement benefits through their place of employment would be excluded from obtaining the benefits of the exemption merely because they worked for a very

small business or could not obtain such benefits for some other reason.

*Id.* at 692.

The Debtor testified that, in the nine years prior to purchasing the annuity, she had worked for her own business, J & L Arborists, cleaning up tree damage from storms. She also testified that, prior to the tree business, she worked for a number of different small retail establishments and a dental office and sold real estate. She also worked for Colonial Life Insurance Company for about three years, doing presentations for accident insurance sales. Nevertheless, it appears to the Court that the Debtor has not worked anywhere for a very long period of time, which would have provided a retirement plan in which she could have invested. The Court notes that she does schedule an IRA in the amount of $96,000 in Schedule B, but that does not on its own suggest the Debtor is not entitled to set aside additional funds for her own retirement. Rather, this factor is significant in determining whether the payments under the annuity are reasonably necessary for the support of the Debtor. The Court, therefore, places little weight on the fact the Debtor only made a single contribution the year before bankruptcy to establish this annuity.

### Return on Investment.

■ The *Andersen* court noted that, "an investment which returns only the initial contribution with earned interest or income is more likely to be a non-exempt investment. In contrast, investments which compute payments based upon the participant's estimated life span, but which terminate upon the participant's death or the actual life span, are akin to a retirement investment plan. That is, will the debtor enjoy a windfall if she outlives her life expectancy? Is she penalized if she dies prematurely?" *In re Andersen*, 259 B.R. at 691. *See also In re Bramlette*, 333

B.R. at 921. In this case, the annuity at issue is a life annuity with a ten-year guaranteed period. It is, therefore, one as described by the *Andersen* and *Bramlette* courts in which the payments are based upon the participant's estimated life span but which terminate upon the participant's death. As the *Andersen* court opined, such plans are "akin" to a retirement investment plan. The guaranteed period of ten years is not sufficient to change the Court's mind in this regard. The Court notes that the amount paid under the annuity over a ten-year period is only $166,696.80, which is less than the amount invested, and most certainly does not represent any return on the investment. As the Court in *Andersen* noted, "[s]he is guaranteed these monthly payments for the remainder of her life, and, thus, if she lives longer than her life expectancy, her investment of her inheritance was indeed a prudent one. If she dies earlier than anticipated, her beneficiary will receive the payments for only a short period of time." 259 B.R. at 692. The Court, therefore, concludes this factor leans favorably toward exemption.

### Pre–Bankruptcy Planning.

The Trustee suggests the purchase of the annuity was pre-bankruptcy planning on the part of the Debtor because she sought advice and was insolvent on a balance sheet-basis at the time the annuity was purchased. The Trustee also argues the annuity was a planning device because it represented a conversion from a non-exempt asset in a brokerage account to an exempt asset in the form of an annuity.

■ The Court notes, however, that the mere fact of a conversion of an asset from a non-exempt one to an exempt one is not sufficient to disallow the exemption. *See 4 Collier on Bankruptcy,* ¶ 522.08[4], p. 522–48 n. 21. Therein, Collier quotes

the House report in stating that the "conversion of nonexempt property to exempt property is not *per se* fraudulent." *Id.* (emphasis in original). The Eleventh Circuit has ruled similarly. In *Havoco of Am. Ltd. v. Hill,* 197 F.3d 1135 (11th Cir.1999), the court considered an objection to a homestead exemption by a debtor. One of the issues presented to the Court of Appeals was "whether the debtor could exempt his Florida homestead when the debtor acquired the homestead with nonexempt assets with actual intent to hinder, delay or defraud creditors." *Id.* The Eleventh Circuit held that, since the exemptions themselves were governed by Florida law, the circumstances under which the exemptions could be disqualified would also be governed by Florida law. The Eleventh Circuit certified the question to the Florida Supreme Court. In *Havoco of Am., Ltd. v. Hill,* 790 So.2d 1018 (Fla. 2001), the Florida Supreme Court held that an actual intent to hinder, delay or defraud creditors did not invalidate the homestead exemption under Florida law. Based on this ruling, the Eleventh Circuit upheld the debtor's right to take the exemption, notwithstanding the conversion of non-exempt assets to exempt assets and the actual intent to hinder, delay or defraud creditors. *Havoco,* 255 F.3d 1321 (11th Cir.2001). Subsequently, Congress amended 11 U.S.C. § 522(*o*) to limit exemptions in residences acquired with an actual intent to hinder, delay or defraud creditors. Interestingly, however, Congress did not amend Section 522 to limit any other exemptions acquired with an actual intent to hinder, delay or defraud creditors. All of the foregoing further suggests and confirms the original congressional intent that conversion of an asset from a nonexempt asset to an exempt asset in and of itself is not a determining factor as to whether the asset remains exempt. The Court has located no Geor-

gia law on this point, so assumes the same legislative intent as Congress. Of course, any such action could constitute a fraudulent conveyance under Section 548 or under state law, or could provide a basis to object to a debtor's discharge.

The Trustee argues the Debtor's pre-bankruptcy planning intent is further evidenced by the fact the asset was purchased just a little over a year prior to the filing of the bankruptcy case. This fact is not relevant. The purchase of the annuity would not be a preference where a one-year look-back period would be relevant since it is not a payment on account of an antecedent debt. Moreover, after the 2005 amendments to the Bankruptcy Code, the look-back period for a fraudulent conveyance is two years and so the acquisition of the annuity remains within that time period.

The Debtor's testimony confirmed she sought advice from a number of different advisors as to the purchase of the annuity. However, there was no evidence as to the substance of the discussions. There is no evidence as to whether the Debtor sought advice for purposes of planning a bankruptcy filing, or whether the Debtor was seeking advice for tax reasons or just generally for the best retirement mechanism, given her age and her needs. Finally, the evidence shows that the Debtor was insolvent on a balance sheet basis at the time the annuity was purchased. However, the Debtor was adamant that in May 2009 the business continued and she was paying her debts as they came due, both at the company level and personally. The Court notes that virtually all of the Debtor's debts are a result of guarantees of corporate debts or other business expenses. In sum, the Court concludes that the purchase of the annuity was not primarily for bankruptcy planning purposes.

*Control.*

 One of the most important factors in evaluating whether a plan or contract is of the type intended to be exempted under the Georgia Code is the level of control the debtor may exercise over the asset. "If the debtor has discretion to withdraw from the corpus, then the contract most closely resembles a nonexempt investment." *In re Andersen,* 259 B.R. at 691. The Trustee, at the hearing and also in his brief, has enumerated a number of provisions in the annuity over which the Debtor has control which the Trustee contends demonstrates that this is not a true retirement device.

The Trustee's allegations of control can be divided into four categories: (1) initial choices relating to the annuity; (2) whether the Debtor can select an annuity certain; (3) spendthrift provisions; and (4) the ability to make changes to the annuity. Each will be addressed below.

The Trustee alleges the Debtor has unnecessary control over the annuity because the Debtor chose an annuity as opposed to any other investment or retirement device, chose the payment start date, chose the beneficiary, chose the payment option, chose the payee, and could choose whether her beneficiaries can obtain a lump sum payment in the event of a payout within the guaranteed period. The Court finds that none of these are unique qualities to this plan which make it any different substantively from most all other retirement plans. Moreover, once the choice has been made, the Court views the choice made as more important than the choices not made.

First, the ability to choose an annuity is no different than the ability of the debtor to choose to put her money in an IRA or Roth IRA or to participate in certain company retirement plans or to buy a certificate of deposit. Next, the Debtor chose the payment start date as one month after the purchase of the annuity. This annuity, like an IRA, requires that the minimum start date be 59½ in order to avoid a 10% tax penalty. The Court does not believe that the ability to choose the payment start date provides a different level of control than the Debtor has over an IRA. With an IRA, the debtor can also choose when to begin to withdraw her funds, but will pay a penalty if the withdrawal occurs before age 59½ or has not begun by age 70½. 26 U.S.C. §§ 72(t); 408(a)(6) and 4974. Next, the Trustee points out that the Debtor could choose the beneficiary of the annuity. Again, parties are entitled to choose the beneficiaries of IRAs or of company-sponsored retirement plans, so this factor does not reflect an inappropriate level of control. 26 C.F.R. § 1.401(a)(9)–4. Further, the ability to choose whether the beneficiaries can obtain a lump sum if the Debtor dies within 10 years is not a level of control that benefits the Debtor in any way.

Lastly, the Trustee makes much of the fact that the Debtor could choose from a number of different payment options. As discussed above, in the Court's view, it is not the ability to choose which is important, but rather what is chosen. In this case, the Debtor chose a life contract with a guaranteed period, which in the Court's view indicates an intent to have a retirement-type plan. If, however, the Debtor had purchased an annuity, as did the debtors in *In re Michael* and *In re Bramlette,* where the payment start date or the payment option had not yet been selected, the freedom available to the Debtor at the time the petition was filed suggests a level of control inconsistent with a retirement program. Here, as in *In re Andersen,* as of the petition date, the payment option had been selected and payments had begun and the option selected was consistent with a retirement plan.

Next, the Trustee points to section 4 on page 4 of Movant's Exhibit 1 (the annuity agreement), which discusses an "Annuity Certain". This section provides that "the owner also may elect to have the value of the payments for the remainder of the specified number of months paid in one sum". The Trustee argues that this provision allows the Debtor to cash out the annuity at any point. However, when reading the contract as a whole, it is evident to the Court that an "Annuity Certain" was one of the payment options the Debtor could have selected. It is under the section of the annuity contract called "Payment Options" and is numbered as follows:

1. Life annuity.
2. Life annuity with guaranteed period.
3. Life with refund option.
4. Annuity certain.
5. Joint life and survivor annuity.
6. Joint life and survivor annuity with guaranteed period.

The declaration page for the annuity contract shows that, in fact, this Debtor selected "life with guaranteed period" and not "Annuity Certain". The fact the Debtor could have selected "Annuity Certain", which may have raised issues about the Debtor's level of control over the contract, is not determinative since the Debtor did not make that election.

 Next, the Trustee points to the spendthrift provisions of the annuity. The spendthrift provision is as follows:

Unless we receive written request by the Owner to delete this provision, then, to the extent allowed by law:

1. Only the Owner may transfer, anticipate, commute or encumber the proceeds of this policy; and
2. Only legal process against the Owner may affect the proceeds of this policy.

Thus, the Debtor's rights as *owner*, as opposed to payee, were subject to her creditors. The Court notes that the entire spendthrift provision is caveated by the phrase "to the extent allowed by law". Under O.C.G.A. § 33–28–7, "the proceeds of annuity ... contracts issued to citizens or residents of this state, upon whatever form, shall not in any case be liable to attachment, garnishment or legal process in favor of any creditor of the person who is the beneficiary of such annuity contract unless the annuity contract was assigned to or was effected for the benefit of such creditor or unless the purchase, sale or transfer of the policy is made with the intent to defraud creditors." It appears, therefore, under Georgia law, access by creditors would similarly be limited to the Debtor's rights as "Owner", not payee. The payments which the Debtor receives under the annuity are in her capacity as payee, not owner. The Trustee is correct, however, that the Debtor could pledge the contract or proceeds thereof to a creditor, both as owner and payee. Under Internal Revenue Code 26 U.S.C. § 72(e)(4)(A), pledging an annuity is equivalent to a withdrawal from the annuity and subjects the amount of the pledge to the same tax consequences as if it had been withdrawn. The Court notes the same is true with respect to an IRA. 26 U.S.C. § 408(e)(4). This factor does indicate a level of control, but the Court views the control as limited since it is the ownership interest, and not the Debtor's interest as payee, which can be attached by creditors. Moreover, the repercussions of the Debtor pledging or encumbering her interest are the same as with an IRA, which is exempt.

Lastly, the Trustee points to the provisions in the annuity regarding general ownership terms. The annuity provides that the owner may,

1. Exercise the rights under this contract; and

2. Assign the contract; and

3. Release or discharge the contract; and

4. Change the contract if we agree to it; and

5. Enjoy the benefits under this contract.

These terms of ownership certainly provide a level of control to the Debtor. The question in the Court's mind, however, is whether that level of control is inconsistent with a retirement vehicle. The Court notes, for example, that funds may be withdrawn from an IRA and, once withdrawn, can be paid over to any person. The owner of the IRA will pay a penalty, but the control could be exercised. The Supreme Court in *Rousey v. Jacoway* relied heavily on the penalties associated with actions in an IRA account in satisfying itself that an IRA was the type of retirement plan Congress intended to exempt under Section 522. *Rousey*, 544 U.S. 320, 125 S.Ct. 1561. Similarly, the Court notes that, under many 401(k) plans, funds can be withdrawn from the 401(k), or borrowed from the 401(k) and paid to other parties, all with some penalties associated. The same appears to be true with respect to this annuity. Of course, given the Debtor's age, the penalties will not be applicable. Additionally, the Debtor paid taxes on the funds deposited in the annuity, so withdrawing those funds may have little practical impact on the Debtor's taxes. The Court recognizes that the source of the funds in an IRA is earned income, while that is not the case here. Nevertheless, the Court notes the similarity between the level of control permitted the Debtor with this annuity and the level of control permitted debtors over age 65 with IRAs and 401(k) plans and other retirement vehicles that are clearly exemptible.

The Trustee argues that this level of control is the only reason the Debtor chose an annuity over some other investment or retirement vehicle. However, there are other reasons a debtor may choose an annuity over an IRA or over a 401(k). First, there are no company-sponsored plans in which this Debtor can participate. There are limits to the amount of money that can be deposited into an IRA which are tied to "earned income" and other tax ramifications that affect the choice of whether to invest in an annuity or some other vehicle. Since the word "annuity" is included in the list of exemptions in O.C.G.A. § 44–13–100(a)(2)(E), surely some sort of annuity must be exemptible. The Court cannot say as a matter of law that simply choosing an annuity is evidence of the Debtor's desire to retain control.

Having reviewed the various factors, the Court notes they point in both directions. However, the Court finds (i) the Debtor did intend the annuity to be a wage substitute and evidenced her intent, not only in testimony, but by the payment option she selected, (ii) the payment option reflects no real return on her investment but instead an intent to obtain income for her life, (iii) there is no persuasive evidence that the purchase of the annuity was part of pre-bankruptcy planning and (iv) the Debtor does not have inappropriate control over the annuity. Thus, the Court concludes the annuity at issue in this case is the type of annuity and type of plan protected by O.C.G.A. § 44–13–100(a)(2)(E).

### ON ACCOUNT OF AGE

Having determined that the annuity at issue is one included within the exemption of O.C.G.A. § 44–13–100(a)(2)(E), the next question is whether the payments made are on account of "illness, disability, death, age, or length of service". The Trustee

argues that the payments are not made on account of age because the Debtor was 65 at the time she purchased the annuity. The Trustee relies upon the Eighth Circuit decision of *In re Eilbert*, 162 F.3d 523 (8th Cir.1998). Therein, the court noted the fact the annuitant was over 65 at the inception of the contract did not automatically mean all payments under the annuity were on account of age. *Id.* at 528. The Court agrees with this statement, but notes the opposite is similarly not true. In other words, the mere fact a debtor is over the age of 65 at the time the annuity is purchased does not mean it can *not* be on account of age. The Supreme Court in *Rousey,* a decision rendered after the *Eilbert* decision, made it clear that investment in an IRA which included penalties for early withdrawal constituted payments on account of age. The annuity which the Debtor purchased here also contained penalties for early withdrawal. The fact the Debtor had already exceeded that age when she purchased the annuity cannot automatically disqualify her without the Court holding that no person over the age of 59½ can prepare for retirement. Given that workers in general are working longer and frequently past the age of 65, such a per se rule makes no sense. Moreover, the Debtor testified it was her age that prompted her to purchase the annuity and choose the lifetime payment option because she was concerned about how she would be cared for in her old age when she no longer had wages. The Court finds this prong of the test has been satisfied.

### *REASONABLY NECESSARY FOR THE SUPPORT OF THE DEBTOR*

Neither the Trustee nor the Debtor submitted any evidence as to the extent to which the payments under the annuity were necessary for the support of the Debtor. The Debtor testified she also receives Social Security funds. The Debtor's schedules reflect an IRA of $96,000. She testified to a number of cost-cutting measures on her living expenses, such as moving into an apartment and attempting to take a roommate. However, the Court does not have sufficient evidence on which to rule as to the necessity of the annuity payments for the support of the Debtor. The Debtor did testify she has no dependents, so the only issue is the support of the Debtor.

Nevertheless, it is clear to the Court that, to the extent annuity payments would be made to beneficiaries during the guaranteed period, those funds are not necessary for the support of the Debtor. Therefore, the Court instructs the Debtor to change the beneficiary on the annuity to the bankruptcy estate of the Debtor. Moreover, the Court instructs that such beneficiary designation shall be irrevocable. The Debtor is instructed to file a certification of having made such irrevocable designation with the Court within 30 days of the date hereof. The Court notes further that, having made an irrevocable designation of a beneficiary, the Debtor's ownership rights are therefore limited in accordance with page 6 of the annuity contract.

### *CONCLUSION*

The Court concludes the annuity at issue in this case is "a payment under a pension, annuity or similar plan or contract on account of ... age" as defined in O.C.G.A. § 44–13–100(a)(2)(E) and as such is exemptible to the extent reasonably necessary for the support of the Debtor. The Trustee is directed to notify the Court within 10 days hereof if he wishes to challenge the necessity of the payments for the support of the Debtor. Upon such notifi-

cation, the Court will set a further evidentiary hearing on this issue.