**In re Ricky Joe JONES, Cheryl Ann Jones, Debtors.**

No. 01–21267.

United States Bankruptcy Court, D. Kansas.

Jan. 25, 2011.

470

Robert S. Tomassi, Pittsburg, KS, for Debtors.

## MEMORANDUM OPINION AND ORDER DENYING TRUSTEE'S OBJECTION TO PROPERTY CLAIMED AS EXEMPT

ROBERT D. BERGER, Bankruptcy Judge.

The Chapter 7 Trustee objects to Debtors' claimed exemption of a final annuity payment Debtor Ricky Joe Jones is to receive as part of a Federal Employers Liability Act (FELA)[1] claim settlement (Doc. No. 52). This matter constitutes a core proceeding over which this Court has jurisdiction.[2]

The Court finds the proceeds of the FELA settlement are exempt under 11 U.S.C. § 522(d)(10).

1. 45 U.S.C. § 51.

### Findings of Fact

Debtors filed their Chapter 7 petition on April 26, 2001. Debtors claim one remaining annuity lump-sum payment exempt under 11 U.S.C. § 522(d)(10)(C). The annuity is the result of a FELA claim settled in 1988.

On May 6, 1986, Debtor was severely injured during the course of his employment with the Kansas City Southern Railway. Debtor alleged the injury was permanently disabling and was caused by the railway's negligence. Debtor filed a FELA claim in 1987. Debtor and KCS ultimately entered a settlement whereby, without admitting liability, KCS agreed to pay Debtor $155,000 initially, $700 per month for life with a minimum guarantee of 30 years, and lump-sum payments of $20,000 at year 15, $40,000 at year 20, $60,000 at year 25, $150,000 at year 30, and $200,000 at year 35. The initial payment was reduced by payments previously made to Debtor by the Railroad Retirement Board, Benefit Trust Life Insurance Company pursuant to Debtor's union's collective bargaining agreement with KCS, and KCS itself. In return, Debtor released his claim and waived his seniority rights and future employment with KCS.

In 1998, Debtor sold the rights to all but the last lump-sum payment for $55,351.03.

In 2001, Debtor and his wife filed bankruptcy. Debtor informed his bankruptcy counsel about the last lump-sum payment coming due in 2023; however, counsel did not disclose the FELA-related asset in Debtors' original schedules.

In 2009, Debtor attempted to sell the last lump-sum payment. The proposed buyer notified the Trustee of the purported sale. The Trustee filed his motion to reopen the case to administer the previ-

2. 28 U.S.C. § 157(b)(2)(B); 28 U.S.C. § 1334.

ously undisclosed asset. Debtors amended their schedules and claimed the FELA settlement exempt.

The Trustee objects to Debtors' exemption because he classifies the FELA claim as a personal injury, settlement proceeds of which are not exempt under Kansas law. The Trustee argues 11 U.S.C. § 522(d)(10)(C), which exempts disability benefits and § 522(d)(10)(E), which exempts employment-related benefits, do not apply. Debtors argue the injury disabled Mr. Jones, entitling him to claim the settlement exempt under § 522(d)(10)(C).

### Discussion

#### A. Whether the Property Is Exempt.

 FELA is a special federal negligence law which gives the right to most railroad employees to sue their employer for personal injuries which were caused by the railroad's negligence.[3] FELA also removes traditional bars to tort recovery such as contributory negligence.[4] Because FELA is confined to liability for injuries suffered by employees in the course of their employment, it bears a strong resemblance to workers' compensation laws, but it is not a workers' compensation scheme.[5] FELA differs significantly from workers' compensation laws, which typically provide relief without regard to fault. Under FELA, there can be no recovery without

proving the employer's negligence. Also, unlike workers' compensation, the plaintiff recovers for pain and suffering and damages are uncapped.

 Railroad workers are not covered by state workers' compensation laws. Instead, railroad workers are covered by the Railroad Retirement Act (RRA), which resembles both a private pension program and a social welfare plan.[6] The RRA provides disability and retirement benefits based upon the worker's length of service. RRA disability payments are not premised on the injury occurring as a result of the railroad's negligence. The RRA establishes conditions for retirement and disability, but it does not address employer tort liability.

 Scant case law exists which addresses whether a FELA claim or its settlement is exempt, and if so, under which statute.[7] As the Trustee argues, a FELA claim, being in the nature of a personal injury claim, could be exempt under a personal injury exemption such as § 522(d)(11); however, that particular exemption is not available to Kansas debtors.[8] Section 522(d)(10), which is available to Kansas debtors pursuant to K.S.A. § 60–2312, exempts certain benefits which are akin to a debtor's future earnings.[9] For example, a debtor's right to receive

---

3. 45 U.S.C. § 51.

4. 45 U.S.C. § 53.

5. *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 543, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994) (FELA is not a workers' compensation statute. FELA does not make the employer the insurer of the safety of his employees while they are on duty. The basis of liability is negligence, not the fact an injury occurred.)

6. 45 U.S.C. § 231a *et seq.*; *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979).

7. *See, e.g., In re Albrecht*, 89 B.R. 859 (Bankr. D.Mont.1988) (FELA settlement exempt under § 522(d)(10)(C)); *contra In re Lagrow*, 165 B.R. 34 (Bankr.C.D.Ill.1994) (FELA claim not exempt under Illinois statute similar to § 522(d)(10)(C)). RRA annuities are exempt under 45 U.S.C. § 231m.

8. Section 522(d)(11) exempts certain compensation for losses, including a loss of future earnings caused by a personal injury. *In re Albrecht*, 89 B.R. at 860–61.

9. *Id., citing* H.R. 595, 95th Cong. 1st Sess. 362 (1977), 1978 U.S.C.C.A.N. 5787, 6318.

workers' compensation benefits is exempt under § 522(d)(10).[10] A work-related injury resulting in a disability can create a hybrid asset comprised of both compensation for a loss caused by a personal injury and work-related benefits intended to replace future earnings. While personal injury compensation is exempt under § 522(d)(11), other forms of disability payments are also exempt under § 522(d)(10).[11] Thus, the issue framed in this case is whether Debtor's FELA settlement is exempt under § 522(d)(10).

■■■ The Trustee bears the burden of proving the exemption is not properly claimed.[12] Exemptions are granted by statute to provide the debtor with a fresh start and keep families from destitution. Exemptions are construed liberally in favor of the debtor; however, courts may not enlarge the exemption or read into it provisions not found there.[13]

Section 522(d)(10) provides:

(d) The following property may be exempted under subsection (b)(2) of this section:

(10) The debtor's right to receive—

. . .

(C) a disability, illness, or unemployment benefit;

. . .

(E) a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor. . . .

■■■ An exemption under § 522(d)(10)(C) requires the benefit be received as payment in lieu of future earnings of a debtor whose ability to generate future earnings has been reduced or lost because of disability, illness, or unemployment.[14] Workers' compensation and Social Security disability are typical disability payments exempted under this subsection.[15]

■■■ An exemption under § 522(d)(10)(E) requires the benefits received (1) be in the nature of a stock bonus, pension, profitsharing, annuity, or similar plan or contract; (2) arise on account of illness, disability, death, age or length of service; and (3) are reasonably necessary for the support of the debtor and the debtor's dependents.[16] The exemption protects future income streams which are intended to replace wages lost upon retirement, disability, or the death of a wage earner upon whom the claimant was dependent.[17] Section 522(d)(10)(E) is consistently read as exempting employ-

---

10. *Id.* However, in Kansas, workers' compensation is more specifically exempt under K.S.A. § 44–514.

11. *See, e.g., In Wegrzyn,* 291 B.R. 2 (Bankr. D.Mass.2003) (privately purchased disability insurance proceeds exempt under § 522(d)(10)(E)).

12. Fed. R. Bankr.P. 4003.

13. *Johnston v. Barney,* 842 F.2d 1221, 1223 (10th Cir.1988); *Nohinek v. Logsdon,* 6 Kan. App.2d 342, 345, 628 P.2d 257 (1981).

14. *In re Sanchez,* 362 B.R. 342, 351 (Bankr. W.D.Mich.2007).

15. *In re Wegrzyn,* 291 B.R. at 5.

16. *Rousey v. Jacoway,* 544 U.S. 320, 325–26, 125 S.Ct. 1561, 161 L.Ed.2d 563 (2005).

17. *In re Stover,* 332 B.R. 400, 403 (Bankr. W.D.Mo.2005) (citing *Checkett v. Vickers (In re Vickers),* 954 F.2d 1426, 1429 (8th Cir.1992); *In re Collett,* 253 B.R. 452, 454 (Bankr. W.D.Mo.2000)); *see also* H.R. REP. No. 95–595, at 362 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 6318.

ment-related substitutes for hourly or salaried wages.[18]

▮▮▮▮▮ Both subsections (C) and (E) compensate for disability payments. However, benefits under § 522(d)(10)(C) are wholly exempt with no limitation as to their amount. Payments under § 522(d)(10)(E) are partially exempt to the extent reasonably necessary for the support of a debtor and his or her dependents. Workers' compensation and similar welfare payments are inherently limited in amount and thus may be assumed to be already curtailed to an amount reasonably necessary to keep the debtor from destitution.[19] They are fully exempt under § 522(d)(10)(C). On the other hand, Congress added specific language to subsection (E) relating to other sources of income which are not inherently limited.[20] Pensions and other employment-related benefits maybe limited by § 522(d)(10)(E).[21] By limiting contractual payments under § 522(d)(10)(E) to an amount reasonably necessary for the support of the debtor and the debtor's dependents, Congress directs the courts to make a factual determination as to how much of the asset should be retained by the debtor for his fresh start and how much of the asset should pay back creditors. Distinguishing benefits based upon their relation to providing for the debtor's basic needs follows the historical purpose of exemptions laws, which is to give debtors a fresh start and keep them from destitution.

▮▮▮▮ Contractual payments made on account of disability are exempt under § 522(d)(10)(E) because such payments contain no inherent limit in amount related to the debtor's basic needs.[22] Whether an asset qualifies as a pension, annuity, or other similar plan or contract depends upon whether the contract provides benefits in lieu of earnings after retirement.[23] A pension is defined as a fixed sum ... paid under given conditions to a person following his retirement from service (as due to age or disability).[24] The common feature of similar plans exempt under § 522(d)(10)(E) is to fill or supplement a salary or wage void. To determine whether a contract provides a substitute for wages, courts examine the facts and circumstances surrounding the contract's creation as well as its contents.[25]

▮▮▮▮ In this case, Debtor settled his pending FELA claim and pursuant to the settlement, he reimbursed the RRA fund and an insurance policy benefitting him under his union's collective bargaining agreement. Debtor took the settlement in lieu of both his potential FELA claim recovery and his actual RRA and insurance benefits. In this latter regard, Debtor supplanted his disability benefits with the

**18.** *Rousey v. Jacoway,* 544 U.S. at 331, 125 S.Ct. 1561.

**19.** *Sheehan v. Lincoln Nat'l Life Ins. Co. (In re Morehead),* 283 F.3d 199, 206 (4th Cir.2002).

**20.** *Id.*

**21.** *In re Wegrzyn,* 291 B.R. at 7.

**22.** *Id.* at 8.

**23.** Simply identifying a plan or contract as an annuity does not make it the type of annuity Congress intended to exempt under § 522(d)(10)(E). *See, e.g., In re Ortiz,* 419 B.R. 855 (Bankr.D.Kan.2009) (wrongful death settlement proceeds used to purchase annuity not exempt under § 522(d)(10)(E)); *In re Cassell,* 443 B.R. 200 (Bankr.N.D.Ga.2010) (annuity purchased by 65–year–old businesswoman in anticipation of her retirement as her business failed exempt under § 522(d)(10)(E)).

**24.** *Rousey v. Jacoway,* 544 U.S. at 330, 125 S.Ct. 1561.

**25.** *In re Cassell,* 2010 WL 5185054, at *3.

settlement agreement. Further, the settlement agreement required Debtor to disclaim his position and seniority rights at KCS and enter early retirement on account of his disabling injury. In exchange, KCS funded the annuity as provided in its contract with Debtor. The annuity at issue is truly a hybrid of a personal injury settlement, a disability benefit, and an employer-funded disability pension.

Under these facts and under the plain language of § 522(d)(10), this particular FELA settlement is exempt under both subsections (d)(10)(C) and (E). The settlement agreement is a contract with Debtor's former employer, which is not only similar to a disability pension, but, in fact, supplants Debtor's disability pension and RRA benefits. Thus, the annuity payment at issue is Debtor's right to receive a payment under a contract on account of disability and is also Debtor's sole disability benefit in place of otherwise exempt RRA benefits.

The remaining payment due under the annuity is fully exempt. Debtor testified he was never able to recover from the loss of the relatively high income he received as a railroad worker. When he filed bankruptcy in 2001, he had $40,000 in unsecured debt. At the time of trial, he testified he had over $100,000 in unsecured debt. The entire settlement made in 1988 functioned as compensation for lost future wages, and those wages have been inadequate to support Debtor and his spouse. A review of Debtors' schedules does not show an extravagant lifestyle or suggest any areas where Debtors could further cut expenses. Debtor testified he recently sought to liquidate the remaining annuity payment to pay his current debts, and not for some other self-indulgent purpose.

Debtor clearly needs the liquidated annuity now to address his current financial crisis and to provide for himself and his spouse.

**B. Whether the Exemption Should Be Denied for Debtors' Failure to Initially Disclose the Asset.**

 Debtors did not disclose the FELA-related annuity when they filed their original schedules in 2001. Concealing property of the estate is grounds for denying an amended exemption claim if there is bad faith by the debtor or prejudice to creditors.[26] The Trustee bears the burden of proof by the preponderance of the evidence.[27]

 Debtor testified his counsel advised him the asset was too remote and insignificant in 2001, so it did not have to be disclosed. If true, counsel gave incorrect advice. Even so, Debtor has a high school education and has not shown himself sophisticated in financial matters. Debtor's testimony was credible—he relied upon his counsel's advice in good faith and without reason to doubt him. The Trustee has not met his burden to prove the exemption should be denied for its failure to be disclosed.

 However, Debtors' failure to disclose the asset harmed the Trustee by causing him to expend time and incur fees and expenses in his investigation of the asset and in his good faith pursuit of the sale of the asset for the benefit of the estate. Pursuant to 11 U.S.C. § 105(a), Debtor shall pay the Trustee $5,000 to reimburse him for the expenses he would not have otherwise incurred but for Debtors' failure to fulfill their obligations under 11 U.S.C. § 521.

---

26. *In re Ford,* 492 F.3d 1148,1155 (10th Cir. 2007).

27. *Id.*

## Conclusion

The Trustee's Objection to Debtors' Exemption is DENIED. The parties are directed to the Order Denying Motion to Sell (Doc. No. 73), which was entered in conformity with this Memorandum and was issued in conjunction herewith.

IT IS SO ORDERED.