[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-13115

_____

D.C. Docket Nos. 1:11-cv-00136-CAP ; USBC 10-74119-WLH


In re: LOU ANN CASSELL,

                                        Debtor.

_____

ROBERT B. SILLIMAN,
Chapter 7 Trustee,

                                        Plaintiff - Appellant,

versus

LOU ANN CASSELL,

                                        Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(August 3, 2012)

Before CARNES, MARTIN, and JORDAN, Circuit Judges.

CARNES, Circuit Judge:

This is an appeal in a bankruptcy case that turns on the interpretation of a Georgia statutory provision exempting certain annuities from bankruptcy estates. The questions presented are sufficiently unsettled, important, and likely to recur that we believe the best course is to certify them to the Georgia Supreme Court, which is the one true and final arbiter of Georgia law. See Mullaney v. Wilbur, 421 U.S. 684, 691, 95 S.Ct. 1881, 1886 (1975) (noting that the United States Supreme Court "repeatedly has held that state courts are the ultimate expositors of state law"); Blue Cross & Blue Shield of Ala., Inc. v. Nielsen, 116 F.3d 1406, 1413 (11th Cir. 1997) ("The final arbiter of state law is the state supreme court . . . .").

## I.

In late 2008, Cassell inherited $220,000 from her aunt. At that time, both Cassell and her wholly owned company, J&L Arborists, LLC, were insolvent. Cassell was still able to pay both her personal debts and the company's debts as they came due, at least for a while. After consulting with attorneys and accountants, she used her $220,000 inheritance to purchase a single-premium fixed annuity on May 1, 2009. Cassell was 65 years old at that time. She began

2

receiving monthly payments of $1,389.14 on June 1, 2009, and under the annuity contract she is scheduled to receive those payments for the rest of her life. The contract also guarantees the payments for ten years regardless of when Cassell dies. She designated her children as the beneficiaries of the payments if she dies within the ten-year guarantee period.

On May 11, 2010, a year after she had purchased the annuity, Cassell filed a Chapter 7 bankruptcy petition (as did her company). She included the annuity as an asset in her Schedule B disclosures, and in her Schedule C filing she listed it as exempt property under Ga. Code Ann. § 44-13-100(a)(2)(E). That Georgia statutory provision permits a debtor to exempt from her bankruptcy estate "annuity" payments if the payments are both "on account of . . . age" and "reasonably necessary for the support of the debtor." Id.

The trustee objected, contending that Cassell's annuity is nonexempt because it does not meet the requirements of the statute. The trustee argued that the word "annuity" in the Georgia exemption statute has a special meaning and not every investment or insurance product labeled as an annuity qualifies as one under the statute. The trustee asserted that Cassell's annuity does not qualify under Ga. Code Ann. § 44-13-100(a)(2)(E) because: (1) Cassell purchased it with funds she inherited instead of with her salary or wages; (2) she did not intend for the

3

payments to substitute for her wages; (3) she exercised too much control over it; and (4) the circumstances suggest she purchased it as a prebankruptcy planning measure. According to the trustee, the payments Cassell receives are not "on account of . . . age" because she chose to begin receiving them immediately, and the fact that she was 65 when she purchased the annuity is not enough to make the payments on account of age. Finally, the trustee argued that the payments are not "reasonably necessary" for Cassell's support because she is self-sufficient and was not supported by her aunt.

The bankruptcy court held that Cassell's annuity is an "annuity" within the meaning of the Georgia bankruptcy exemption statute. The court based that conclusion on findings that: when Cassell purchased it she intended for the payments she would receive to substitute for wages; the payment option she selected reflected her intent to obtain income for the duration of her life; the annuity was not prebankruptcy planning; and she did not have inappropriate control over the corpus. The court also decided that the payments were "on account of . . . age" due to the fact that she had purchased the annuity because of her age. The court did not decide whether the payments were reasonably necessary for Cassell's support, believing that it lacked sufficient evidence to

4

make that determination.[1]

The trustee appealed the bankruptcy court's order to the district court, which also concluded that Cassell's annuity qualified as an "annuity" for the purposes of the Georgia bankruptcy exemption. The district court agreed with the bankruptcy court that the annuity payments are on account of Cassell's age because her age had motivated her to buy the annuity. The district court affirmed as to the issues that the bankruptcy court had addressed but remanded the case, leaving it for the bankruptcy court to decide in the first instance whether the annuity payments are reasonably necessary for Cassell's support.

Instead of waiting to litigate the reasonably necessary issue in the bankruptcy court, the trustee appealed to this Court, conceding that the annuity payments are reasonably necessary for Cassell's support.[2] Appellant Br. 10. The

---

[1] The bankruptcy court did rule, however, that any annuity payments that might be made to Cassell's children (if her death occurred within ten years of the purchase date) were not exempt; as a result, the court ordered Cassell to irrevocably designate the bankruptcy estate instead of her children as the residual beneficiary. That ruling is not involved in this appeal.

[2] Absent that concession, we might lack appellate jurisdiction. In bankruptcy cases, we have jurisdiction over only a final order of the district court, see 28 U.S.C. § 158(d), which is an order that leaves only "ministerial" duties for the bankruptcy court, see Jove Eng'g v. I.R.S., 92 F.3d 1539, 1548 (11th Cir. 1996). If the factual record is not fully developed or if there is "significant judicial activity [for] the bankruptcy court involving considerable discretion," In re TCL Investors, 775 F.2d 1516, 1518–19 (11th Cir. 1985), the district court's order is not final and we lack jurisdiction, id. at 1519. Because the trustee concedes that the payments are reasonably necessary for Cassell's support, the factual record is complete and there is no "significant activity . . . involving considerable discretion" for the bankruptcy court to undertake. That makes the district court order final and gives us appellate jurisdiction to review it. See 28

5

trustee hangs his appeal on the contentions that Cassell's annuity is not an "annuity" within the meaning of the Georgia exemption statute and that, even if it is, the annuity payments are not made "on account of . . . age."

## II.

We review <u>de novo</u> the legal determinations of the bankruptcy court and the district court, <u>In re Garner</u>, 663 F.3d 1218, 1219 (11th Cir. 2011), but we review only for clear error the bankruptcy court's factfindings, <u>In re Mitchell</u>, 633 F.3d 1319, 1326 (11th Cir. 2011). The party objecting to an exemption, here the trustee, bears the burden of showing that the exemption is improper. <u>See</u> Fed. R. Bankr. P. 4003(c).

The Bankruptcy Code allows a debtor to exempt certain property from the bankruptcy estate, <u>see</u> 11 U.S.C. § 522(b)(1), and it lists categories of property eligible for exemption, <u>see</u> <u>id.</u> § 522(b)(2), (d). Individual states, however, may opt out of the exemptions provided in the Bankruptcy Code and provide their own list of exemptions. <u>See</u> <u>id.</u> § 522(b)(2). Georgia is one of the states that has done that. <u>See</u> Ga. Code Ann. § 44-13-100.

Cassell contends that her annuity payments are exempt from inclusion in the

U.S.C. § 158(d); <u>In re Porto</u>, 645 F.3d 1294, 1298–99 (11th Cir. 2011); <u>Jove Eng'g, Inc.</u>, 92 F.3d at 1548; <u>In re TCL</u>, 775 F.2d at 1518–19.

bankruptcy estate under this provision of the Georgia exemption statute:

> (a) . . . [A]ny debtor who is a natural person may exempt . . . for the purposes of bankruptcy, the following property:
>
> . . .
>
> (2) The debtor's right to receive:
>
> . . .
>
> (E) A payment under a pension, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor . . . .

Id. § 44-13-100(a)(2)(E).  To be exempt under that provision Cassell's annuity must meet three requirements.  Cf. Rousey v. Jacoway, 544 U.S. 320, 325–26, 125 S.Ct. 1561, 1566 (2005).  First, it must be an "annuity" as that term is used in the Georgia statute.  Ga. Code Ann. § 44-13-100(a)(2)(E).  Second, the annuity payments to Cassell must be "on account of . . . age."[3]  Id.  Third, the payments must be "reasonably necessary to the support of the debtor."  Id.  Because the trustee concedes that the third requirement is met, we turn to the other two.

A.

As for the first requirement, neither party points to any decisions of the

---

[3] The second requirement actually is that the annuity payments be "on account of illness, disability, death, age, or length of service," Ga. Code Ann. § 44-13-100(a)(2)(E), but age is the only one of those that conceivably fits Cassell's situation.

7

Georgia courts determining exactly what an "annuity" is for purposes of Ga. Code Ann. § 44-13-100(a)(2)(E), and we have found none. So we look to basic principles of statutory construction and decisions analyzing analogous exemptions.

Statutory construction under Georgia law starts with the familiar rule that we are required "to construe a statute according to its terms [and] to give words their plain and ordinary meaning." Slakman v. Cont'l Cas. Co., 587 S.E.2d 24, 26 (Ga. 2003). The plain meaning of "annuity" is "[a]n obligation to pay a stated sum, usu[ally] monthly or annually, to a stated recipient." Black's Law Dictionary 105 (9th ed. 2009); see also NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co., 513 U.S. 251, 255, 115 S.Ct. 810, 812 (1995) ("Annuities are contracts under which the purchaser makes one or more premium payments to the issuer in exchange for a series of payments, which continue either for a fixed period or for the life of the purchaser or a designated beneficiary."). A "fixed annuity" is "[a]n annuity that guarantees fixed payments, either for life or for a specified period." Black's Law Dictionary 105; see also id. (defining "annuity" as alternatively meaning "a right, often acquired under a life-insurance contract, to receive fixed payments periodically for a specified duration").

Other Georgia statutes define "annuity" in a similar way. See, e.g., Ga.

8

Code Ann. § 33-28-1(1) ("'Annuity' means a contract by which one party in return for a stipulated payment or payments promises to pay periodic installments for a stated certain period of time or for the life or lives of the person or persons specified in the contract."); id. § 47-2-1(3) ("'Annuity' means annual payments for life derived from the accumulated contributions of a member."); id. § 47-3-1(3) (same).  And at least one Georgia appellate decision has defined "annuity" the same way in another context.  See Wolfe v. Breman, 26 S.E.2d 633, 637 (Ga. Ct. App. 1943) ("'Annuity' has been defined in general terms as technically a yearly payment of certain sum or money, granted another in fee for life or years, but in broader sense as fixed sum granted or bequeathed and payable periodically, but not necessarily annually, subject to such specific limitations as to duration as grantor or donor may lawfully impose.").

When analyzing the analogous federal exemption statute, 11 U.S.C. § 522(d)(10)(E),[4] the United States Supreme Court "look[ed] to the ordinary

---

[4] The federal exemption states:

(d) The following property may be exempted . . . :

. . .

(10) The debtor's right to receive—

. . .

9

meaning of [the] term[]." <u>Rousey</u>, 544 U.S. at 330, 125 S.Ct. at 1568.  It defined an annuity as "an amount payable yearly or at other regular intervals for a certain or uncertain period (as for years, for life, or in perpetuity)." <u>Id.</u>, 125 S.Ct. at 1569 (alteration and quotation marks omitted).  It noted that annuities differ from pension plans in that "[e]mployers establish and contribute to . . . pension plans . . . , whereas an individual can establish and contribute to an annuity on terms and conditions he selects." <u>Id.</u> at 331, 125 S.Ct. at 1569.  And it recognized that annuities did not "necessarily provide[] retirement income." <u>Id.</u>  Although the Court in <u>Rousey</u> was interpreting the federal exemption statute instead of the Georgia one, we may consider its statements on the question of the generally accepted or plain meaning of the word "annuity."

The trustee contends, however, that the word "annuity" in the Georgia

---

(E) a payment under a stock bonus, pension, profitsharing, <u>annuity</u>, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless—

(i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose;

(ii) such payment is on account of age or length of service; and

(iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b), or 408 of the Internal Revenue Code of 1986.

11 U.S.C. § 522(d)(10)(E) (emphasis added).

10

exemption statute does not carry its plain meaning.  Instead, his position is that to be an exemptible "annuity" within the meaning of that statute the source of the funds used to buy the annuity must be employment-related income, salary, or wages, and not an inheritance.  In support of that position, the trustee cites the legislative history of 11 U.S.C. § 522(d)(10)(E), which is the analogous federal exemption, and precedent from the United States Supreme Court and other courts applying the federal exemption or some other state's exemption.  See H.R. Rep. No. 95-595, at 362 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 6318 ("Paragraph (10) exempts certain benefits that are akin to future earnings of the debtor."); see also Rousey, 544 U.S. at 331–32, 125 S.Ct. at 1569; In re Eilbert, 162 F.3d 523, 526–27 (8th Cir. 1998).  The trustee also argues that general principles of statutory interpretation indicate that we should interpret the word "annuity" in light of the word "pension."  Doing so, he argues, leads to the conclusion that the Georgia exemption requires the annuity to be, in his words, "like a true retirement vehicle" and funded by wages or some other employment-related income—not funded by an inheritance.  See In re Eilbert, 162 F.3d at 526–27 (interpreting "annuity" in the Iowa exemption statute).

Both the Georgia and federal exemption statutes refer to a "pension,"

11

"annuity," "or similar plan or contract."[5]  The Supreme Court held in Rousey that

an individual retirement account is a "similar plan or contract" for purposes of the

federal statute.  544 U.S. at 334–35, 125 S.Ct. at 1571.  The Court reasoned that,

like the plans listed in the statute, IRAs "provide a substitute for wages (by wages,

for present purposes, we mean compensation earned as hourly or salary income),

and are not mere savings accounts."  Id. at 329, 125 S.Ct. at 1568.  It specifically

noted that "[w]hat all of [the listed] plans have in common is that they provide

income that substitutes for wages," id. at 331, 125 S.Ct. at 1569, and that "IRA

income substitutes for wages lost upon retirement and distinguish IRAs from

typical savings accounts," id. at 332, 125 S.Ct. at 1569.  The trustee argues that

those statements mean that the source of the funds used to purchase an exemptible

annuity must be wages or other employment-related income and not an

inheritance.

The trustee also urges us to follow the In re Eilbert decision.  The Eighth

Circuit held in that case that an annuity purchased with inherited funds is not a

"pension, annuity, or similar plan or contract" within the meaning of Iowa Code §

---

[5]The federal statute, unlike the Georgia statute, also includes in the list with pensions and annuities "stock bonus" and "profitsharing" plans.  11 U.S.C. § 522 (d)(10)(E); see supra note 4.

12

627.6(8)(e) (1998).[6] <u>In re Eilbert</u>, 162 F.3d at 527.  In doing so, the court noted that Iowa's exemption statute was modeled on the federal exemption statute, 11 U.S.C. § 522(d)(10)(E), and that "Congress described that federal exemption as 'exempt[ing] certain benefits that are akin to future earnings of the debtor.'"  <u>Id.</u> at 526 (quoting H.R. Rep. No. 95-595, at 362 (1977), <u>reprinted in</u> 1978 U.S.C.C.A.N. 5787, 6318).  Viewing "annuity" as a "purely generic term which refers to the method of payment and not to the underlying nature of the asset," the Eighth Circuit reasoned that the term should be read in light of the other plan type listed in the statute, which was "pension."  <u>Id.</u> at 526–27.  That is how it reached the conclusion that only annuities that "provide benefits in lieu of earnings after

_____

[6] The Iowa exemption stated:

A debtor who is a resident of this state may hold exempt from execution the following property:

. . .

8.  The debtor's rights in:

. . .

e.  A payment or a portion of a payment under a pension, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, unless the payment or a portion of the payment results from contributions to the plan or contract by the debtor within one year prior to the filing of a bankruptcy petition, which contributions are above the normal and customary contributions under the plan or contract, in which case the portion of the payment attributable to the contributions above the normal and customary rate is not exempt.

Iowa Code § 627.6(8)(e) (1998).

13

retirement," however funded, can be exempted under Iowa Code § 627.6(8)(e). Id. at 527. Because the annuity payments in that case did not "replace lost income" and because the annuity was purchased with a single payment of inherited funds instead of "with contributions over time," the annuity payments were not "akin to future earnings." Id. (quotation marks omitted). In sum, the trustee argues that Cassell's annuity is not an exemptible "annuity" because she used inherited funds and not wages or salary income to purchase it.

Bankruptcy courts have generally agreed that not every annuity is an "annuity" for the purposes of the Georgia exemption statute. See, e.g., In re Cassell, 443 B.R. 200, 204 (Bankr. N.D. Ga. 2010); In re Bramlette, 333 B.R. 911, 920–21 (Bankr. N.D. Ga. 2005); In re Michael, 339 B.R. 798, 802–07 (Bankr. N.D. Ga. 2005). See generally In re Green, No. 06–14084, 2007 WL 1031677 (Bankr. E.D. Tenn. Apr. 2, 2007) (unpublished) (applying the Georgia exemption).

Cassell contends, though, that her annuity is an "annuity" within the meaning of Ga. Code Ann. § 44-13-100, arguing that we should give "annuity" its plain and ordinary meaning as set out in the Rousey opinion. See 544 U.S. at 330, 125 S.Ct. at 1569. Her fallback position is that if we do look beyond the plain meaning of "annuity," we should apply the multifactor test from In re Andersen, 259 B.R. 687, 691–92 (8th Cir. BAP 2001). In that case, the Bankruptcy

14

Appellate Panel of the Eighth Circuit laid out six factors to consider when deciding whether a particular annuity qualifies as an "annuity" under the federal exemption statute:

[(1)] Were the payments designed or intended to be a wage substitute?

[(2)] Were the contributions made over time?  The longer the period of investment, the more likely the investment falls within the ambit of the statute and is the result of a long standing retirement strategy, not merely a recent change in the nature of the asset.

[(3)] Do multiple contributors exist?  Investments purchased in isolation, outside the context of workplace contributions, may be less likely to qualify as exempt.

[(4)] What is the return on investment?  An investment which returns only the initial contribution with earned interest or income is more likely to be a nonexempt investment.  In contrast, investments which compute payments based upon the participant's estimated life span, but which terminate upon the participant's death or the actual life span, are akin to a retirement investment plan.  That is, will the debtor enjoy a windfall if she outlives her life expectancy?  Is she penalized if she dies prematurely?

[(5)] What control may the debtor exercise over the asset?  If the debtor has discretion to withdraw from the corpus, then the contract most closely resembles a nonexempt investment.

[(6)] Was the investment a prebankruptcy planning measure?  In this regard, the court may examine the timing of the purchase of the contract in relation to the filing of the bankruptcy case.

In re Andersen, 259 B.R. at 691–92.

15

The trustee argues that the Andersen test conflicts with the analysis used in Rousey and In re Eilbert. The test does, however, include factors that those two decisions and others have considered when deciding whether a particular annuity is an exemptible "annuity" under various statutes. See, e.g., Rousey, 544 U.S. at 329–332, 125 S.Ct. at 1568–1570 (considering whether IRAs provide a substitute for wages, the first In re Andersen factor); In re Eilbert, 162 F.3d at 527 (considering the first, second, third, and sixth In re Andersen factors); In re Huebner, 986 F.2d 1222, 1224 (8th Cir. 1993) (considering the debtor's control over the corpus, the fifth In re Andersen factor); In re Bramlette, 333 B.R. at 921 (considering all of the In re Andersen factors); In re Michael, 339 B.R. at 804 (considering the first In re Andersen factor).

Rousey would dictate that we give "annuity" its plain meaning if we were applying the federal exemption statute, but we are not. We are applying the Georgia exemption statute. When the Georgia legislature opted out of the federal statutory list of bankruptcy exemptions and enacted its own, it intended that Georgia debtors be treated differently from federal debtors in at least some circumstances. That cautions against assuming that an interpretation of the federal statute should be followed in a Georgia case, although the caution is lessened in situations like this one where the relevant statutory language is materially

16

identical.  We are unsure whether the Georgia Supreme Court would be persuaded by the Rousey reasoning, by the Eighth Circuit's In re Eilbert reasoning, by the Eighth Circuit Bankruptcy Appellate Panel's In re Andersen reasoning, or by some other reasoning.

B.

In addition to disagreeing about the meaning of "annuity," the parties also disagree about whether Cassell's annuity gives her a right to receive payments that are "on account of . . . age," which is another requirement for this exemption.  Ga. Code Ann. § 44-13-100(a)(2)(E).  Neither party points to any Georgia decisions that would help us resolve the disagreement, nor have we found any.  The bankruptcy court and the district court concluded that the payments are on account of age based in part on Cassell's testimony that she purchased this annuity because she was 65.  Both courts also relied on a federal early-withdrawal tax penalty for annuities that is similar to the one for IRAs that the Supreme Court found significant in Rousey.

The Supreme Court held in Rousey that IRAs do "provide a right to payment on account of age."  544 U.S. at 328–29, 125 S.Ct. at 1567–68.  It reasoned that "on account of" means "because of," which "require[s] a causal connection between the term that the phrase 'on account of' modifies and the

17

factor specified in the statute at issue."[7] Id. at 326, 125 S.Ct. at 1566. The Court concluded that the debtor's rights to the IRA payments were causally connected to the debtor's age because of a 10% tax penalty for withdrawing funds from an IRA before the age of 59 years and 6 months. Id. at 327–29, 125 S.Ct. at 1566–68; see also 26 U.S.C. §§ 72(t), 408(a). The early withdrawal penalty "suggests that Congress designed it to preclude early access to IRAs," Rousey, 544 U.S. at 327, 125 S.Ct. at 1567, and because the penalty "is removed when the account holder turns age 59 1/2, the [debtors'] right to the balance of their IRAs is a right to payment 'on account of' age," id. at 328, 125 S.Ct. at 1567.

Cassell argues that for the same reason the Supreme Court found IRA payments to be on account of age, her annuity payments are as well—both types of payments are tax advantaged. An annuitant is permitted to exclude a portion of the payments from her gross income each year until she has recovered all of her investment in the annuity contract. See generally Treas. Reg. §§ 1.72-1 to -11. At least some annuities are subject to the same early withdrawal penalties as IRAs. See 26 U.S.C. § 72(q). When she purchased her annuity Cassell had already passed the age at which the early-withdrawal penalty would have applied, but she

---

[7] Georgia case law also suggests that "on account of" and "because of" are synonymous. See Lunceford v. Peachtree Cas. Ins. Co., 495 S.E.2d 88, 90–91 (Ga. Ct. App. 1997) ("[A]nother construction could be that the phrase ['because of'] means 'by reason of' or 'on account of.'").

18

argues that is irrelevant.

The trustee counters that Cassell's annuity does not qualify for favorable tax treatment and insists that the annuity contract itself states that it does not. He argues that the annuity payments do not qualify for favorable tax treatment under the Internal Revenue Code because, he believes, sections 401(a), 403(a), 403(b), and 408 of the Code limit qualifying assets to those purchased with one's own earnings. Cassell purchased her annuity with inherited funds instead of earnings. Because of that difference, her annuity payments are different from the IRA payments considered in Rousey.[8]

Cassell argues, as the bankruptcy court and the district court concluded, that the annuity payments meet the "on account of age" requirement for exemption in another way: Cassell purchased the annuity because of her advancing age. The bankruptcy court drew a distinction between a mandatory and a permissible inference. It reasoned that Cassell's age when she purchased the annuity did not compel a finding that the payments are on account of age, cf. In re Eilbert, 162

---

[8]Although we have set out the parties' positions about whether the annuity payments are eligible for favorable federal tax treatment based on Cassell's age, we need not decide that issue, at least not now. Whether we will ever have to decide it will depend on the answer to our certified questions. If the Georgia Supreme Court decides that the state exemption issue turns on the federal tax law issue, we can then decide that federal issue. On the other hand, if the Georgia Supreme Court decides that the state exemption issue does not turn on the federal tax issue, there (mercifully) will be no need to decide it.

F.3d at 528, but that fact did permit the court to make that finding.  And the court made it.

It may be that payments from all fixed life annuities, such as the one in this case, should be considered to be made on account of age under the Georgia statute. Fixed life annuities use the annuitant's age at the time the annuity payments begin to calculate the size of the payments,[9] and in that way the payments will always be tied to the annuitant's age.  However, neither the parties nor we have been able to find any decisions of the Georgia courts addressing whether Cassell's annuity payments are on account of age as required by Ga. Code Ann. § 44-13-100(a)(2)(E).  And it is unclear to what extent, if any, federal tax treatment of annuities is relevant to the Georgia exemption statute's treatment of them.  The intent of Congress is not necessarily the intent of the Georgia legislature.  Also unclear is whether Cassell's intent in buying the annuity or the manner in which the payments are calculated results in them being on account of age.  Lacking any

---

[9] Life annuity payments are based on, among other things, the life expectancy of the annuitant at the time the payments begin.  See Explaining Types Of Fixed Annuities, Investopedia (Feb. 23, 2011), http://www.investopedia.com/articles/retirement/05/071205.asp#axzz215PRPKps.  An annuitant's life expectancy depends in no small part on her age.  See U.S. Soc. Sec. Admin., Period Life Table, 2007, http://www.ssa.gov/STATS/table4c6.html.  Because an older person has a shorter life expectancy, an annuitant who is older when the annuity payments begin will receive larger annuity payments.  See, e.g., AARP Lifetime Income Plan With 20 Year Guarantee, AARP, http://www.nylaarp.com/Annuities/20-Year-Guarantee (last visited July 23, 2012).

guidance from the Georgia courts on these questions, we are reluctant to hazard a guess.

## III.

Fortunately, guessing is not our only option. When there is substantial doubt about the correct answer to a dispositive question of state law, a better option is to certify the question to the state supreme court. See World Harvest Church, Inc. v. Guideone Mut. Ins. Co., 586 F.3d 950, 960–61 (11th Cir. 2009) ("[T]he certification procedure [is] a valuable tool for promoting the interests of cooperative federalism . . . . [that] helps save time, energy, and resources and produces authoritative answers to novel or unsettled questions of state law." (citation and quotation marks omitted)).

This case presents a significant state law issue that is likely to arise again. At oral argument, counsel for the trustee stated that a significant number of bankruptcy debtors are seeking to exempt these types of annuity payments. With the graying of the population and more Americans shuffling toward retirement, that number will only increase. A final resolution of how to apply this Georgia exemption is needed, and only the Georgia Supreme Court can provide one. See LaFrere v. Quezada, 582 F.3d 1260, 1262 (11th Cir. 2009) ("Because state supreme courts are the final arbiters of state law, when we write to a state law

21

issue, we write in faint and disappearing ink, and once the state supreme court speaks the effect of anything we have written vanishes . . . ." (quotation marks omitted)).  Absent certification, the question seems unlikely to reach that court. So we refrain from writing to this state law issue in our own faint ink and ask for the help of the one court that can write the answer in bold, black letters.

> We certify the following questions to the Georgia Supreme Court:
>
> (1)  Is a single-premium fixed annuity purchased with inherited funds an "annuity" for the purposes of Ga. Code Ann. § 44-13-100(a)(2)(E)?
>
> (2)  Is a debtor's right to receive a payment from an annuity "on account of . . . age" for the purposes of Ga. Code Ann. § 44-13-100(a)(2)(E) if the annuity payments are subject to age-based federal tax treatment, if the annuitant purchased the annuity because of her age, or if the annuity payments are calculated based on the age of the annuitant at the time the annuity was purchased?

Of course, "[o]ur statement of the questions is not designed to limit the inquiry of the" Georgia Supreme Court.  Mosher v. Speedstar Div. of AMCA Int'l, Inc., 52 F.3d 913, 917 (11th Cir. 1995).  Instead, as we have stated before:

> [T]he particular phrasing used in the certified question is not to restrict the [Georgia] Supreme Court's consideration of the problems involved and the issues as the Supreme Court perceives them to be in its analysis of the record certified in this case.  This latitude extends to the [Georgia] Supreme Court's restatement of the issue or issues and the manner in which the answers are to be given, whether as a comprehensive whole or in subordinate or even contingent parts.

22

<u>Martinez v. Rodriguez</u>, 394 F.2d 156, 159 n.6 (5th Cir. 1968).[10]  The entire record

on appeal in this case, including copies of the parties' briefs, is transmitted along

with this certification.

    **QUESTIONS CERTIFIED**.

---

[10] In <u>Bonner v. Prichard</u>, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), we adopted as binding precedent all Fifth Circuit decisions handed down before October 1, 1981.