[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-11229
_____

D.C. Docket No. 1:14-cv-00054-WLS,
Bkcy No. 13-bkc-10835-JDW

In re: DENISE E. MOONEY,

Debtor.
_____

DENISE E. MOONEY,

Plaintiff - Appellant,

versus

JOY R. WEBSTER,
Trustee,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(February 11, 2016)

Before HULL and JILL PRYOR, Circuit Judges, and CONWAY,[*] District Judge.

PER CURIAM:

This bankruptcy appeal turns on whether a Georgia statute exempts the assets in a health savings account ("HSA") from inclusion in a bankruptcy estate. The relatively recent creation and subsequent rise in popularity of HSAs render an answer to this question all the more important and pressing. Although bankruptcy law is primarily federal law, we believe the interpretation of this state statute is best left to the "ultimate expositor" of Georgia law. *See Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Accordingly, we certify three questions about the statute to the Supreme Court of Georgia.

## I.

## A.

In 2008, Denise Mooney opened an HSA to assist with payment of out-of-pocket healthcare expenses. Ms. Mooney testified that she used her personal checking account to fund the HSA, and she used the disbursements only to pay for her medical expenses.[1] She further testified that that her bank never informed her that any withdrawals from the HSA were for an improper purpose.

---

[*] Honorable Anne C. Conway, United States District Judge for the Middle District of Florida, sitting by designation.

[1] In addition, Ms. Mooney withdrew from her HSA $1,000 that was erroneously deposited in excess of the statutory annual contribution limit. This withdrawal was permitted

Ms. Mooney filed a petition for Chapter 7 bankruptcy in 2013.  In her Schedule B disclosures, she listed her HSA with a value of $17,570.93.  In her Schedule C filing, she claimed the contents of the HSA as property exempt from the bankruptcy estate pursuant to O.C.G.A. § 44-13-100(a)(2)(C) and (E).  Subsection (a)(2)(C) exempts, in relevant part, any "disability, illness, or unemployment benefit," whereas subsection (a)(2)(E) exempts any "payment under a pension, annuity, or similar plan or contract on account of illness [or] disability."

The Chapter 7 trustee, Joy Webster, objected to the HSA's exemption.  The bankruptcy court held a hearing on the trustee's objection to the exemption and sustained the objection in a memorandum opinion.  Ms. Mooney appealed to the district court, which affirmed the bankruptcy court's decision.  Ms. Mooney now appeals the district court's order.

**B.**

Congress created health savings accounts in the Medicare Prescription Drug, Improvement, and Modernization Act of 2003.  *See* Pub.L. 108-173, § 1201, 117 Stat. 2066, 2469-79 (2003).  Georgia authorized the establishment of HSAs in 2008.  *See* 2008 Ga. Laws 463.  HSAs encourage individuals with high-deductible

---

under Internal Revenue Service regulations.  *See* I.R.S., Publication 969, Health Savings Accounts and Other Tax-Favored Health Plans (2015), https://www.irs.gov/publications/p969/ar02.html.

health plans to save for healthcare expenses by offering tax-preferred treatment for their savings. *See* 26 U.S.C. § 223. Although the beneficiary of an HSA may use the funds for any purpose, s*ee* Treasury Notice 2004–50, 2004 WL 1636921 at Q–79, expenditures used for anything other than qualified medical expenses generally are taxable as gross income and are subject to an additional 20 percent tax. *See* 26 U.S.C. § 223(f)(4)(A).[2]

HSAs have the potential to affect bankruptcy estates significantly. One HSA advisor and consultancy company estimates that the number of HSA accounts in the United States rose to 13.8 million in 2014, a 29 percent increase from 2013. *2014 Year-End Devenir HSA Research Report*, Devenir (Feb. 11, 2015), http://www.devenir.com/research/2014-year-end-devenir-hsa-market-research-report/. In 2014, HSAs represented over $24 billion in assets. *Id.* The trend toward HSAs shows no signs of slowing down.

## II.

We review *de novo* the legal determinations of the bankruptcy court and the district court, but we review only for clear error the bankruptcy court's factual findings. *In re Cassell*, 688 F.3d 1291, 1294 (11th Cir. 2012), *certified question answered sub nom. Silliman v. Cassell*, 738 S.E. 2d 606 (Ga. 2013). The objecting

---

[2] Subsection (f)(4) includes two exceptions, neither of which is applicable here. 26 U.S.C. § 223(f)(4)(B)-(C).

4

party, here the trustee, bears the burden of proving that an exemption is improperly claimed.  *See* Fed. R. Bankr. P. 4003(c).

## III.

In general, federal law governs bankruptcy.  Typically a debtor exempts property from a bankruptcy estate under the Bankruptcy Code.  *See* 11 U.S.C. § 522(b)(1).  The Bankruptcy Code permits states to adopt their own lists of exemptions, however.  *See id.* § 522(b)(2).  Georgia has opted out of the federal Bankruptcy Code exemptions in favor of its own list of exempt property set forth in O.C.G.A. § 44-13-100.

Ms. Mooney argues that the contents of her HSA are exempt from the bankruptcy estate under two subsections of the Georgia statute, O.C.G.A. § 44-13-100(a)(2)(C) and (a)(2)(E).  In relevant part, the statute states:

> (a) . . . [A]ny debtor who is a natural person may exempt . . . for the purposes of bankruptcy, the following property:
> . . .
> (2) The debtor's right to receive:
> . . .
> (C) A disability, illness, or unemployment benefit;
> . . .
> (E) A payment under a pension, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor . . . .

We discuss the application of subsections (a)(2)(C) and (a)(2)(E) in turn.

**A.**

To be exempt from the bankruptcy estate under O.C.G.A. § 44-13-100(a)(2)(C), the property in question must be a "disability, illness, or unemployment benefit." Ms. Mooney argues that HSAs are exempt because they fit squarely within ordinary definitions of the word "benefit" and thus are covered by the plain language of subsection (a)(2)(C). Additionally, she contends that any definition of "benefit" that limits the term to benefits associated with employment is overly narrow and would exclude several of the other benefits listed in section (a)(2).

The trustee disagrees. According to the trustee, a benefit under subsection (a)(2)(C) must be received from an employer, insurance, or a public program such as social security. All of the benefits listed in section (a)(2) are monthly payments from third parties, whereas Ms. Mooney's HSA, funded by the accountholder herself, allows her to access the funds at any time.

The district court agreed with the trustee that an HSA is not exempt under subsection (a)(2)(C), concluding that "HSA funds are not specifically or clearly set out as exempt under the Georgia Code and are not clearly identified with or clearly analogous to exempted funds." *In re Mooney*, No. 1:14-CV-54, 2015 WL 853898, at *4 (M.D. Ga. Feb. 26, 2015).

6

**B.**

Under O.C.G.A. § 44-13-100(a)(2)(E), a debtor may exempt "payment under a pension, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor." The parties dispute whether an HSA is "[a] payment under a pension, annuity, or similar plan or contract," as well as whether an HSA provides payment "on account of illness [or] disability."[3]

Both Ms. Mooney and the trustee rely on *Rousey v. Jacoway*, 544 U.S. 320 (2005), and *Silliman v. Cassell*, 738 S.E. 2d 606 (Ga. 2013), for support. In *Rousey*, the United States Supreme Court held that an individual retirement account ("IRA") could be exempt under the federal analogue to subsection (a)(2)(E), 11 U.S.C. § 522(d)(10)(E). 544 U.S. at 326. First, the Supreme Court noted that an IRA is a payment "on account of" age because the accountholders' "right to payment from IRAs is causally connected to their age," given that they would suffer a 10 percent penalty if they withdrew funds from their IRAs before age 59½. *Id.* at 327-28. Second, the Supreme Court held that the IRA was a

---

[3] The trustee also disputes whether the HSA is "reasonably necessary for the support of" Ms. Mooney. O.C.G.A. § 44-13-100(a)(2)(E). Because neither the bankruptcy court nor the district court made any determination regarding this aspect of subsection (a)(2)(E), however, we need not address this argument at this time.

7

"similar plan or contract" to "stock bonus, pension, profitsharing, or annuity plans or contracts." *Id.* at 329.  IRAs are similar in that they "provide income that substitutes for wages earned as salary or hourly compensation." *Id.* at 331.

*Silliman* directly addressed subsection (a)(2)(E).  In *In re Cassell*, we discussed whether a particular type of annuity was exempt from bankruptcy under the statute but decided to certify the question to the Supreme Court of Georgia. 688 F.3d at 1291.  In *Silliman*, the Supreme Court of Georgia answered that the annuity was exempt.  738 S.E. 2d at 464.[4]  It applied *Rousey* to conclude that the annuity qualified under the exemption statute because it "provide[d] income as a substitute for wages." *Id.* at 468.  Additionally, just as with the IRA in *Rousey*, the annuity provided payments "on account of" age. *Id.* at 471.

Because an HSA is not a pension or an annuity, it must be a "similar plan or contract" for the purposes of subsection (a)(2)(E).  Reformulating the United States Supreme Court's definition of "similar" in *Rousey*, "[t]o be 'similar,' an [HSA] must be like, though not identical to, the specific plans or contracts listed in § [44-13-100(a)(2)], and consequently must share characteristics common to the listed plans or contracts."  544 U.S. at 329.

---

[4] The Eleventh Circuit case is *In re Cassell*, 688 F.3d 1291, 1294 (11th Cir. 2012).  The Supreme Court of Georgia answered the certified questions in a case with a different name, *Silliman v. Cassell*, 738 S.E. 2d 606 (Ga. 2013).

8

In *Rousey*, the United States Supreme Court held that IRAs were similar to "stock bonus, pension, profitsharing, or annuity plans or contracts" because both "provide a substitute for wages (by wages, for present purposes, [the Court] means compensation earned as hourly or salary income), and are not mere savings accounts." *Id.* Additionally, the remaining kinds of exempt plans in the statute (social security benefits, unemployment compensation, and local public assistance benefits; veterans' benefits; disability illness, or unemployment benefits; and alimony, support, or separate maintenance) all "concern[ed] income that substitutes for wages." *Id.* at 331; *accord Silliman*, 292 S.E. 2d at 610 ("We agree with the Supreme Court that the common feature of all of these plans [in § 44-13-100(a)(2)] is that they provide income that substitutes for wages.").

To establish whether an IRA provides income that substitutes for wages, the United States Supreme Court looked at several considerations: (1) minimum distribution requirements that set in when the accountholder is "likely to be retired and lack wage income"; (2) IRS treatment of distributions as income only in years when the money is withdrawn, which encourages accountholders to wait until retirement; (3) the 10 percent tax penalty that applies to distributions prior to age 59½; and (4) the 50 percent tax penalty that applies upon failure to take minimum distributions. *Id.* at 331-32. "All of these features show that IRA income

9

substitutes for wages lost upon retirement and distinguish IRAs from typical savings accounts." *Id.* at 332.

Both Ms. Mooney and the trustee argue that *Rousey* and *Silliman* support their positions. According to Ms. Mooney, payments from HSAs are a wage substitute. In essence, she argues, individuals pay for healthcare expenses from either their HSAs or their wages. Consequently, HSAs are wage substitutes. Ms. Mooney also suggests that, because HSAs and IRAs nearly are identical in purpose and structure, HSAs must be exempt if IRAs are.

The trustee takes a contrary view. To the trustee, HSAs are intended to pay for medical expenses not covered by high-deductible insurance plans, not to replace wages or income. The district court agreed with the trustee: "Mooney's HSA is not a substitute for wages; it is a place to park wages that, if used for qualified healthcare expenses, allows favorable tax treatment." *In re Mooney*, 2015 WL 853898, at *3.

As for whether an HSA provides payments "on account of illness [or] disability," again the parties rely on *Rousey* and *Silliman*. In *Rousey*, the United States Supreme Court held that IRAs provided payments "on account of" age because the payments were causally connected to the Rouseys' age. 544 U.S. at 326-29. In particular, the Supreme Court found it persuasive that the Rouseys would pay a "10-percent tax penalty that applies to withdrawals from IRAs made

10

before the accountholder turns 59½." *Id* at 327. This "substantial" penalty suggested that it was Congress's intent in creating IRAs to "preclude early access" to funds in IRAs. *Id.* The Supreme Court rejected the trustee's argument that an IRA does not make payments "on account of" age because the Rouseys could withdraw money from their IRA for any reason, regardless of age, as long as they paid the penalty. *Id.* The penalty, the Supreme Court held, restricted the right to payment of the balance of the IRA enough to connect the right to payment to age. *Id.* at 328. The Supreme Court of Georgia came to the same conclusion regarding annuities in *Silliman*. 738 S.E. 2d at 612-13.

Ms. Mooney contends that HSAs provide payments "on account of illness [or] disability" under subsection (a)(2)(E) because accountholders pay a significant tax (double the tax in *Rousey*) should they use the funds for anything but qualified medical expenses. Ms. Mooney also suggests that the Georgia General Assembly's intent in creating HSAs, to make healthcare more affordable, indicates that HSAs are causally related to illness and disability. Conversely, the trustee asserts that HSAs cannot provide payments "on account of illness [or] disability" if the accountholder retains full control over the funds. Although Ms. Mooney used her HSA only for qualified medical expenses, she could have used the money to pay for personal expenses. Neither the bankruptcy court nor the district court made conclusions as to this particular portion of subsection (a)(2)(E).

11

## C.

We now outline several overarching arguments made by the parties on appeal.

Ms. Mooney asserts that federal and Georgia legislative history support the notion that the legislative bodies intended HSAs to be exempt in bankruptcy, either under subsection (a)(2)(C) or (a)(2)(E). Because the Georgia General Assembly authorized HSAs after it passed section 44-13-100, Ms. Mooney reasons, the legislature intended HSAs to fit within the exemption. The trustee replies that if the Georgia legislature wished to make HSAs eligible in bankruptcy, it would have indicated that by amending the statute. At least six other states have amended their bankruptcy statutes specifically to allow exemptions for HSAs.[5] By contrast, the Georgia General Assembly has had the opportunity to amend the bankruptcy statute to include HSAs but so far has declined to do so. Moreover, the trustee argues that the legislative history of the federal exemption statute makes clear that only certain benefits akin to future earnings of the debtor are exempt from the bankruptcy estate.

The trustee argues that HSAs cannot be exempt under either subsection (a)(2)(C) or (a)(2)(E) because Ms. Mooney already will have received the funds.

---

[5] Those states are Florida, Mississippi, Oregon, Tennessee, Texas, and Virginia. *See* Fla. Stat. § 222.22(2); Miss. Code Ann. § 85-3-1(g); Or. Rev. Stat. § 18.345(1)(*o*); Tenn. Code Ann. § 26-2-105(b); Tex. Prop. Code § 42.0021(a); Va. Code Ann. § 38.2-5604(B).

12

Section 44-13-100(a)(2) specifies "[t]he debtor's right *to receive*." (emphasis added). The trustee notes that Ms. Mooney deposited funds into the HSA from her personal bank account. That is, the HSA consists of funds Ms. Mooney received from other sources. Accordingly, the trustee submits, Ms. Mooney cannot *receive* payments of which she already is in possession.

## IV.

We need not try to divine the answer to these challenging questions of Georgia law. As we noted in *In re Cassell*, "[w]hen there is substantial doubt about the correct answer to a dispositive question of state law, a better option is to certify the question to the state supreme court." 688 F.3d at 1300. Moreover, it is unlikely that Georgia courts would ever have the opportunity to consider this set of important questions if we fail to certify, as federal courts have "original and exclusive jurisdiction" over bankruptcy cases. 28 U.S.C. § 1334(a). The Supreme Court of Georgia thoughtfully analyzed section 44-13-100 after we certified questions to it in *In re Cassell*, 688 F.3d 1291. We would greatly benefit from its assistance once again in this case.

We certify the following questions to the Supreme Court of Georgia:

(1) Does a debtor's health savings account constitute a right to receive a "disability, illness, or unemployment benefit" for the purposes of O.C.G.A. § 44-13-100(a)(2)(C)?

13

(2) Does a debtor's health savings account constitute a right to receive a "payment under a pension, annuity, or similar plan or contract" for the purposes of O.C.G.A. § 44-13-100(a)(2)(E)?

(3) Is a debtor's right to receive a payment from a health savings account "on account of illness [or] disability" for the purposes of O.C.G.A. § 44-13-100(a)(2)(E)?

As in *In re Cassell*, "[o]ur statement of the questions is not designed to limit the inquiry of the" Supreme Court of Georgia. 688 F.3d at 1301 (quoting *Mosher v. Speedstar Div. of AMCA Int'l, Inc.*, 52 F.3d 913, 917 (11th Cir. 1995)). We reiterate that

> the particular phrasing used in the certified question is not to restrict the [Georgia] Supreme Court's consideration of the problems involved and the issues as the Supreme Court perceives them to be in its analysis of the record certified in this case. This latitude extends to the [Georgia] Supreme Court's restatement of the issue or issues and the manner in which the answers are to be given, whether as a comprehensive whole or in subordinate or even contingent parts.

*Martinez v. Rodriquez*, 394 F.2d 156, 159 (5th Cir. 1968).[6]

The entire record on appeal in this case, including copies of the parties' briefs, is transmitted along with this certification.

**QUESTIONS CERTIFIED.**

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), we adopted as binding precedent all Fifth Circuit decisions issued before the close of business on September 30, 1981.